EL PUEBLO DE PUERTO RICO, recurrido, *v.* ALEXANDER GONZÁLEZ RAMOS, recurrente.

*Número:* CC-2005-495 *Resuelto:* 16 de septiembre de 2005

*Vilma A. Vega Saavedra*, abogada de la parte peticionaria; *Pedro G. Goyco Amador*, procurador general, recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Por hechos alegadamente ocurridos el *21 de septiembre de 2004* durante un asalto en una residencia en Lares, Alexander González Ramos fue acusado, como coautor, por los delitos de asesinato en primer grado en su modalidad de asesinato estatutario, conspiración, robo domiciliario y robo de vehículo de motor,[1] y por violaciones a la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951 (25 L.P.R.A. sec. 411 *et seq.*). El Ministerio Fiscal presentó los pliegos acusatorios correspondientes, *bajo las disposiciones del Código Penal de 1974*, ante el Tribunal de Primera Instancia, Sala Superior de Utuado, el 21 de enero de 2005.

El juicio en su fondo comenzó el 11 de mayo de 2005. Así las cosas, el 16 de mayo de 2005 el peticionario, González

---

[1] Arts. 82, 83, 262, 173 y 173B del Código Penal, 33 L.P.R.A. secs. 4001, 4002, 4523, 4279 y 4279b.

Ramos, presentó ante el foro primario una moción de desestimación. Alegó, en síntesis, que los cargos presentados en su contra debían ser desestimados. Como fundamento para ello sostuvo que, al haber entrado en vigor el nuevo Código Penal de 2004,[2] debían aplicársele de forma retroactiva —a través del Art. 9 de este nuevo cuerpo legal (33 L.P.R.A. sec. 4637) o, en la alternativa, a través del Art. 4 del Código Penal de 1974 (33 L.P.R.A. sec. 3004)— las disposiciones "más benignas", en cuanto a la definición de *asesinato estatutario*, del Código Penal de 2004. Arguyó, que la nueva definición de *asesinato estatutario* que ofrece el Art. 106 del nuevo y vigente Código Penal, 33 L.P.R.A. sec. 4734, añade el elemento de que éste sea "consecuencia natural" de la comisión del delito y la producción de la muerte; esto es, que quedó abolida la doctrina del *felony murder rule*. Alegó, además, que la interpretación del Art. 308 del nuevo Código Penal, 33 L.P.R.A. sec. 4935, tiene el efecto de suprimir la definición anterior de *asesinato estatutario*, al añadir el elemento de "consecuencia natural", ya que la nueva doctrina de asesinato estatutario y de coautoría no extienden automáticamente la responsabilidad de una persona que se le imputa haber participado en el delito base.

El Ministerio Fiscal se opuso a la moción de desestimación presentada por el acusado. Alegó, en síntesis, que el Art. 8 del nuevo Código Penal, 33 L.P.R.A. sec. 4636, dispone que la ley penal se aplicará a hechos realizados durante su vigencia y que el Art. 308, ante, plasmó concluyentemente la directriz de que las disposiciones del nuevo Código nunca pudiesen aplicarse retroactivamente, beneficiaran o no al imputado. En vista de ello, sostuvo que el acusado no tenía razón al señalar que debían aplicársele, de forma retroactiva, las disposiciones del Código Penal de 2004 que alegadamente le benefician.

---

[2] Mediante la Ley Núm. 115 de 22 de julio de 2004, *con vigencia el 1 de mayo de 2005 (33 L.P.R.A. sec. 4629).*

Por otro lado, y en cuanto a la definición de *asesinato estatutario*, el Estado alegó que el nuevo Código no suprimía esta modalidad sino que, más bien, lo que hacía era establecer expresamente la relación de causalidad con el delito base, la cual, según sostuvo, siempre había estado inmersa en la prueba que se presenta en los casos de asesinato estatutario.

El 17 de mayo de 2005, el tribunal de instancia denegó, en corte abierta, la moción de desestimación. Determinó que no procedía resolver la controversia en cuanto a si la definición de *asesinato estatutario* que ofrece el nuevo Código Penal constituye una disposición penal más favorable que beneficia al acusado por entender que no había diferencia en cuanto a la definición de *asesinato estatutario* bajo el viejo Código y la definición que ofrece el nuevo Código Penal.[3]

Inconforme con dicho proceder, González Ramos acudió —mediante un recurso de *certiorari*— ante el Tribunal de Apelaciones. Alegó, en síntesis, que el foro primario había errado al denegar la moción de desestimación presentada ya que, bajo el nuevo Código Penal, la conducta que se le imputa no era constitutiva de asesinato estatutario y que, en la medida en que el Art. 308, ante, impedía la aplicación retroactiva del nuevo Código, era inconstitucional.

El foro apelativo intermedio emitió una resolución, denegando la expedición del recurso solicitado. Expresó en ella que la etapa en que se había presentado el mencionado recurso no era la propicia para que éste interviniese, ya que la adjudicación de las controversias planteadas tendría el efecto de interrumpir los procedimientos ante el foro primario.

Aún inconforme, González Ramos acudió —mediante un recurso de *certiorari*— ante este Tribunal, planteando como error, en síntesis y en lo pertinente, que el Tribunal

---

[3] Vale la pena destacar que el referido foro nada dispuso en cuanto a la alegación de que el nuevo Código Penal tuviese aplicación retroactiva.

de Apelaciones erró al no entrar a dirimir la moción de desestimación, la cual trata sobre una controversia novel y al no determinar que el Art. 308 del nuevo Código Penal, ante, era inconstitucional y contradictorio con lo establecido en el citado Art. 4 del antiguo Código Penal. De igual forma, el 31 de mayo de 2005, el peticionario presentó una moción en auxilio de nuestra jurisdicción para que paralizáramos los procedimientos ante el foro de instancia mientras se dilucidaba la controversia ante este Tribunal.

En virtud de la referida solicitud, el 1 de junio de 2005, mediante Resolución a tales efectos, ordenamos la paralización de los procedimientos a nivel del Tribunal de Primera Instancia y concedimos el término de cinco días al Procurador General de Puerto Rico para que expresara lo que a bien tuviese sobre el recurso presentado, *en específico sobre las disposiciones del primer párrafo del Art. 308 del nuevo y vigente Código Penal, y la interacción de éste con el Art. 4 del derogado Código Penal de Puerto Rico, ante.*

El Procurador General ha comparecido en cumplimiento con lo ordenado. Contando con la comparecencia de las partes y estando en posición de resolver el recurso presentado, procedemos a así hacerlo.

I

A. *El principio de favorabilidad*

■ Aun cuando en nuestro ordenamiento penal opera el postulado básico de que la ley aplicable a unos hechos delictivos es aquella vigente al tiempo de cometerse el delito —*Pueblo v. Rexach Benítez*, 130 D.P.R. 273, 301 (1992)— siguiendo la doctrina continental europea, en Puerto Rico, al derogar el Código Penal que venía rigiendo desde 1902, adoptamos el "principio de favorabilidad", el cual quedó consagrado en el Art. 4 del Código Penal de 1974, ante.

█ El principio de favorabilidad ordena la aplicación retroactiva de leyes penales más favorables, lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 4ta ed. rev., San Juan, Ed. Inst. Desarrollo del Derecho, 2000, pág. 92.

█ El Art. 4 del Código Penal de 1974, ante, disponía:

> *Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.*
> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
> Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.
> En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho. (Énfasis suplido.)

█ Conforme el mandato de ley antes transcrito, cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre que ello resulte más favorable que lo dispuesto en la ley vigente al momento de la supuesta comisión de los hechos. Resulta importante señalar que la doctrina establece que el principio de favorabilidad opera cuando el legislador hace una *nueva valoración* de la conducta punible, en el sentido de excluir o disminuir la necesidad de su represión penal. Véase L. Jiménez de Asúa, *Tratado de Derecho Penal*, Buenos Aires, Ed. Losada, 1950, T. II, pág. 543.

█ En la primera oración del antes transcrito Art. 4 está contenida la prohibición constitucional contra las leyes *ex post facto*, que emana del Art. II, Sec. 12 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. *Pueblo v. Rexach Benítez*, ante. Esto significa que, por mandato constitucional, *las leyes penales que perjudiquen al acusado no pueden aplicarse de forma*

*retroactiva.*(⁴) Sin embargo, la situación es diferente en cuanto a las leyes penales más favorables ya que, en cuanto a éstas, no hay disposición constitucional alguna que prohíba su aplicación.

■ No obstante lo anterior, el principio de favorabilidad *no tiene rango constitucional,* quedando la aplicación retroactiva de las leyes penales que favorezcan al acusado dentro de la *prerrogativa total* del legislador. Es por ello que el principio de favorabilidad corresponde a un acto de *gracia legislativa* cuyo origen es *puramente estatutario.* Conforme a lo anterior, el legislador tiene la potestad para establecer *excepciones* al principio de favorabilidad, *ordenando la aplicación prospectiva de la ley vigente al momento de la comisión del hecho punible, aunque sea más desfavorable para el acusado que la ley vigente al momento de la condena.* A. Bascuñán Rodríguez, pág. 42. *Dicho de otra manera, un acusado no tiene un derecho constitucional a la aplicación retroactiva de leyes penales más favorables.*

B. *La doctrina de la supresión y las cláusulas de reserva en el derecho penal norteamericano.*

Aun cuando la jurisprudencia norteamericana no ha formulado una doctrina sobre la aplicación de la ley penal más benigna, por medio de la doctrina de la supresión (*doctrine of abatement*) se atendieron las consecuencias de este principio de una forma muy similar a la doctrina continental.(⁵)

Según la doctrina de la supresión del *common law,* seguida originalmente por los tribunales norteamericanos, la derogación de una ley penal resultaba en la supresión de

_____

(⁴) La ley *ex post facto* se refiere a la aplicación retroactiva de una ley que *agrava* para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Véase E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1992, Vol. II, Sec. 19.1, págs. 545–549.

(⁵) Véanse: Comentario, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation,* 121 U. Pa. L.Rev. 120 (1972); A. Bascuñán Rodríguez, pág. 50.

todos los procedimientos que aun no fuesen finales. Conforme a la mencionada doctrina, se interpretaba que cuando el legislador aprobaba un estatuto que derogaba o modificaba un estatuto penal anterior, tenía la intención de impedir la aplicación judicial del estatuto derogado o modificado. Expresa el profesor Bascuñán que esta doctrina impedía, en términos absolutos, la *preteractividad* de la ley penal,([6]) ya que exigía para la validez de la condena que la disposición formalmente vigente al momento de la comisión del hecho se encontrara también formalmente vigente al momento de la sentencia.([7])

La neutralización de la doctrina de la supresión se concretó con el establecimiento de *cláusulas generales de reserva* (*general saving provisions*) que disponían el principio opuesto, esto es, que salvo decisión expresa del legislador en sentido contrario, *los estatutos penales derogados o enmendados habrían de aplicarse al juzgamiento de los hechos cometidos bajo su vigencia.* Bascuñán Rodríguez, pág. 55; W.R. Lafave y A. Scott, *Substantive criminal law*, St. Paul, Ed. West Pub. Co., 1986, Sec. 2.5(b).

De este modo, por medio de cláusulas de reserva generales aplicables a todas las leyes penales derogadas, enmendadas o reinstaladas, se estableció que al aprobar una nueva ley penal la intención legislativa no es suprimir los procedimientos iniciados —y que aun no hubiesen advenido finales— sino la no supresión de éstos a menos que la Legislatura lo dispusiera así expresamente. Comentario, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U. Pa.

---

([6]) Con el término "preteractividad" el profesor Bascuñán se refiere a la aplicación institucional de una ley penal formalmente derogada, es decir, que ha perdido su vigencia formal al momento de su aplicación judicial en una sentencia, en la cual se juzga un hecho que, sin embargo, fue cometido bajo su vigencia o, excepcionalmente, con anterioridad a su vigencia. Bascuñán Rodríguez, pág. 34. En otras palabras, que a unos hechos cometidos bajo la vigencia de una ley, debe aplicárseles ésta aun cuando haya sido enmendada o derogada.

([7]) Bascuñán Rodríguez, págs. 50–52. Véanse, además: W.R. Lafave y A. Scott, *Substantive Criminal Law*, St. Paul, Ed. West Pub. Co., 1986, Sec. 2.5(a); *The General Pinkney*, 5 U.S. 281 (1809); *United States v. Tynen*, 78 U.S. 88 (1870).

L.Rev. 120, 127 (1972). De igual forma, mediante su apro-
bación, el legislador garantizó la continuidad de los casos
criminales.

El establecimiento de las cláusulas de reserva en el de-
recho penal federal y estatal norteamericano, en conse-
cuencia, *condujo a que la regla general consista en la pre-
teractividad de la ley penal, sea favorable o desfavorable,
en dichas jurisdicciones.* Bascuñán Rodríguez, pág. 120.

La *cláusula de reserva federal*, aprobada por el Con-
greso de Estados Unidos a estos efectos, la encontramos en
1 U.S.C.A. sec. 109. Dicha disposición estatutaria dispone,
en lo pertinente, lo siguiente:([8])

> The repeal of any statute shall not have the effect to release
> or extinguish any penalty, forfeiture, or liability incurred un-
> der such statute, unless the repealing Act shall so expressly
> provide, and such statute shall be treated as still remaining in
> force for the purpose of sustaining any proper action or prose-
> cution for the enforcement of such penalty, forfeiture, or
> liability.

Al analizar la disposición estatutaria antes transcrita,
la pregunta que deben hacerse, y contestar, los tribunales
es si debe aplicarse una nueva ley en reconocimiento de la
voluntad del legislador de derogar una ley anterior o ami-
norar los efectos de una pena, o si la cláusula de reserva
debe entenderse a los efectos de que la intención del legis-
lador es que la nueva ley tenga sólo efecto prospectivo, or-
denando mediante la cláusula de reserva que se aplique la
ley derogada o enmendada como si todavía estuviera
vigente. Comentario, *op. cit.*, pág. 131.

## II

Abordamos la jurisprudencia del Tribunal Supremo de
Estados Unidos interpretativa de la cláusula de reserva

---

([8]) Los estados hicieron lo pertinente, formulando sus legisladores cláusulas de
reserva similares a la federal.

federal. En *United States v. Reisinger*, 128 U.S. 398 (1888), el referido foro se enfrentó a la antes transcrita cláusula de reserva federal. En este caso, se trataba de un acusado bajo una ley que, al momento del juicio, había sido derogada. El acusado alegó como defensa que la nueva ley no contenía una cláusula de reserva que dispusiera que los hechos cometidos bajo la ley derogada aún pudiesen ser procesados y castigados por ésta. El Tribunal Supremo rechazó este argumento y dispuso que la nueva ley debía analizarse en conjunto con la cláusula de reserva federal. El referido Foro expresó, a estos efectos, lo siguiente:

> It is conceded that, under the general principles of the common law, the repeal of a penal statute operates as a remission of all penalties for violations of it committed before its repeal, and a release from prosecution therefore after said repeal, *unless there be either a clause in the repealing statute, or a provision of some other statute expressly authorizing such prosecution.* In this case the court is of the opinion that [1 U.S.C.A. sec. 109], contains such provision. *United States v. Reisinger*, ante, pág. 401.

De este modo, el Tribunal Supremo de Estados Unidos reconoció que la aprobación de la cláusula de reserva federal expresaba la intención legislativa de mantener la vigencia de las leyes penales derogadas o enmendadas para todos aquellos hechos cometidos bajo éstas.[9]

En *Hamm v. Rock Hill*, 379 U.S. 306 (1964), sin embargo, el Tribunal Supremo federal *no* siguió la norma expresada en *United States v. Reisinger*, ante. En este caso se trataba de unos hechos que, anterior a la aprobación de la Carta de Derechos Civiles de 1964 (78 Stat. 241), eran considerados, por leyes estatales, como actos delictivos.[10] Los

---

[9] Así, por ejemplo, en *United States v. Chambers*, 291 U.S. 217, 223 (1934), el Tribunal Supremo de Estados Unidos expresó:

"In a case a statute is repealed o rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions *unless competent authority has kept the statute alive for that purpose.*" (Énfasis suplido.)

[10] Las disposiciones penales estatales en cuestión disponían que si una persona permanecía en un establecimiento comercial luego de que el dueño o encargado

acusados en este caso fueron convictos por violación a la ley estatal antes de la aprobación de la Carta de Derechos. Las convicciones fueron apeladas en las cortes supremas estatales y fueron confirmadas por los referidos foros. Presentada la controversia ante el Tribunal Supremo de Estados Unidos, los acusados alegaron que según la Carta de Derechos Civiles, la conducta por la cual fueron acusados y convictos no constituía delito alguno, ni estatal ni federal, por lo cual su aprobación tenía el efecto de suprimir los procedimientos criminales en su contra.[11] El más alto Tribunal resolvió que, en efecto, la aprobación de la Carta de Derechos Civiles tenía el efecto de suprimir las convicciones de los acusados. El referido foro indicó que la Carta de Derechos Civiles creaba unos derechos estatutarios federales que le garantizaban a toda persona estar libre de discrimen en establecimientos comerciales. Dicho estatuto proveía para que el acto de intentar recibir servicio en establecimientos comerciales de forma pacífica —actos por los cuales fueron acusados los apelantes— fuese descriminalizado. Al analizar la intención legislativa cuando se aprobó esta medida, el Tribunal expresó que el historial legislativo demostraba que la Carta de Derechos podía utilizarse como una defensa contra leyes estatales que prohibían que una persona se beneficiara de los *derechos constitucionales* garantizados por ésta.

---

de dicho establecimiento le hubiese pedido que lo abandonara, dicho acto de resistencia constituía un delito.

[11] La Sec. 201(a) de la Carta de Derechos, pertinente al caso ante la consideración del Tribunal, dispone:

"(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ...." (Citas omitidas.) 42 U.S.C.A. sec. 201(a).

Por su parte, la Carta de Derechos expresa lo siguiente:

"No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 201 or 202, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202." 42 U.S.C.A. sec. 203.

Por consiguiente, el referido Tribunal resolvió que la cláusula de reserva federal no podía impedir la supresión de los procedimientos criminales iniciados contra los acusados, ya que se había sustituido un "crimen por un derecho" y que la continuación de los procedimientos sería un acto inconstitucional. A estos efectos expresó el Tribunal Supremo:

> Rather than a retroactive intrusion into state criminal law this is but the application of a long-standing federal rule, namely, that since the Civil Rights Act *substitutes a right for a crime* any state statute, or its application, to the contrary must by virtue of the Supremacy Clause give way under the normal abatement rule covering pending convictions arising out of a pre-enactment activity. The great purpose of the civil rights legislation was to obliterate the effect of a distressing chapter of our history. This demands no less than the application of a normal rule of statutory construction to strike down pending convictions inconsistent with the purposes of the Act. (Énfasis suplido.) *Hamm v. Rock Hill*, ante, pág. 315.

En consecuencia, el Tribunal Supremo aplicó las disposiciones de la Carta de Derechos Civiles de forma retroactiva y ordenó la desestimación de los cargos contra los acusados. A estos efectos enfatizó que la aplicación retroactiva de la ley en este caso se hacía clara, ya que *la Carta de Derechos Civiles no contenía, en sí misma, una cláusula de reserva.* Sobre el particular, el referido foro expresó:

> [f]uture state prosecutions under the Act being unconstitutional *and there being no saving clause in the Act itself*, convictions for pre-enactment violations would be equally unconstitutional and abatement necessarily follows. (Énfasis suplido.) *Hamm v. Rock Hill*, ante, pág. 315.

Este caso constituye una *excepción* a la normativa establecida por el Tribunal Supremo en *United States v. Reisinger*, ante, que resuelve que las cláusulas de reserva tienen el propósito de impedir que la aprobación de nuevas leyes penales tengan el efecto de suprimir los procesamientos penales iniciados bajo la vigencia de la antigua ley, por-

que aquí se trataba de una conducta que, aunque anteriormente era delictiva, ahora constituía un *derecho* protegido por la Constitución federal.

Siguiendo la normativa establecida en *United States v. Reisinger*, ante, en *Bradley v. United States*, 410 U.S. 605 (1973), al analizar la posibilidad de aplicar una ley penal más favorable de forma retroactiva, *el Tribunal Supremo de Estados Unidos resolvió que si la mencionada ley contenía en sí misma una cláusula de reserva, ésta debía prevalecer ya que expresaba la intención legislativa de que la ley en cuestión sólo tuviese aplicación prospectiva.*[12] En este caso, los apelantes fueron acusados por violación a lo dispuesto en 26 U.S.C.A. sec. 7237(b) (conspirar para vender cocaína). Esta sección disponía que las sentencias impuestas bajo lo contenido en 26 U.S.C.A. sec. 7237(b) no podían ser suspendidas y que los sentenciados, según ésta, no cualificaban para recibir libertad bajo palabra. Posterior a la convicción, pero anterior a la imposición de la sentencia, se aprobó el *Comprehensive Drug Abuse Prevention and Control Act* de 1970, el cual dejó sin efecto la disposición que prohibía que los acusados, bajo los hechos cometidos por los apelantes, cualificaran para disfrutar de libertad bajo palabra. Tanto el tribunal de distrito como el tribunal apelativo se negaron a aplicar las disposiciones más favorables de la nueva ley.

El foro apelativo, tomando en consideración tanto la cláusula de reserva federal contenida en 1 U.S.C.A. sec. 109, como la cláusula de reserva contenida en 26 U.S.C.A. sec. 1103(a) del *Comprehensive Drug Abuse Prevention and Control Act*, resolvió que dichas disposiciones requerían que los hechos cometidos antes de dicha ley fuesen procesados conforme a la ley vigente al momento de su comisión. En otras palabras, *que bajo las cláusulas de reserva, aun*

---

[12] La referida disposición estatutaria dispone:

"Prosecutions for any violation of law occurring prior to the effective date of (the Act) shall not be affected by the repeals or amendments made by (it) ... or abated by reason thereof." (Citas omitidas.) 26 U.S.C.A. sec. 1103(a).

*cuando una ley penal hubiese sido derogada por una posterior, el mandato legislativo era a los efectos de que la ley derogada aplicase como si todavía estuviese vigente.* El Tribunal Supremo de Estados Unidos *confirmó* la sentencia del foro apelativo; resolvió que la cláusula de reserva federal y la específica, contenida en la nueva ley, impedían que el tribunal de distrito pudiese aplicar las disposiciones más benignas de ésta, por lo cual el referido foro tenía que aplicar la ley vigente al momento de la comisión de los hechos.

De este modo, el Tribunal Supremo de Estados Unidos reconoció que si una nueva ley penal —que derogue o enmiende una ley penal anterior— contiene, en sí misma, una cláusula de reserva específica, ésta debe prevalecer ya que tiene el propósito de impedir que sus disposiciones sean aplicadas a hechos cometidos antes de su vigencia.

En *Warden v. Marrero*, 417 U.S. 653 (1974), al igual que en *Bradley v. United States*, ante, estaba en controversia la aplicación retroactiva de las disposiciones más favorables del *Comprehensive Drug Abuse Prevention and Control Act.* En este caso, el tribunal de distrito resolvió que las cláusulas de reserva contenidas en 26 U.S.C.A. sec. 1103(a) de la referida disposición estatutaria y en 1 U.S.C.A. sec. 109, impedían que esta ley aplicase de forma retroactiva. Sin embargo, el foro apelativo intermedio revocó esta determinación y resolvió que las mencionadas disposiciones estatutarias no podían interpretarse de modo que se mantuviese la prohibición de la elegibilidad para recibir libertad bajo palabra cuando la nueva ley, claramente, había derogado dicha disposición. El Tribunal Supremo de Estados Unidos *revocó* la determinación del foro apelativo. El Supremo federal, al expresarse acerca del alcance de la cláusula de reserva general, indicó que dicha disposición tuvo el efecto de abolir la presunción en el *common law* de que la derogación de un estatuto criminal resultaba en la supresión (*abatement*) de todos los procesamientos según éste que aún no fuesen finales y firmes en el último foro

autorizado para revisarlos.(¹³) En particular, el referido Tribunal expresó:

> In consequence, the saving clause has been held to *bar* application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense. (Énfasis suplido.) *Warden v. Marrero*, ante, pág. 661.

El Tribunal Supremo resolvió que al aplicar la cláusula de reserva federal, la disposición legal derogada —26 U.S.C.A. sec. 7237(d)— "sobrevivía" tal derogación y debía ser aplicada —como si todavía estuviese en vigor— a todos los hechos cometidos bajo su vigencia, aun cuando la nueva ley resultase en un tratamiento más favorable para el acusado. Ante los argumentos de los peticionarios en cuanto a que la nueva ley reflejaba la intención del Congreso de aminorar la pena de una conducta y que, por lo tanto, ésta debía tener aplicación retroactiva, el Tribunal Supremo expresó:

> Undeniably this argument has force, but it is addressed to the wrong governmental branch. Punishment for federal crimes is a matter for Congress, *subject to judicial veto only when the legislative judgment oversteps constitutional bounds.* (Énfasis suplido.) *Warden v. Marrero*, ante, pág. 664.

Conforme lo anteriormente expuesto *podemos concluir que la jurisprudencia del Tribunal Supremo de Estados Unidos ha reconocido, en lo referente a las cláusulas de reserva, que ellas, al neutralizar la doctrina de la supresión, impiden que una nueva ley penal que resulte ser más favorable a un acusado, convicto o sentenciado, sea aplicada de forma retroactiva, aun cuando la nueva ley derogue o enmiende una ley anterior;* esto a su vez supone mantener vigentes las disposiciones legales que regían unos actos delictivos sin tomar en consideración que éstas hubiesen sido derogadas o enmendadas por una ley penal

---

(¹³) Citando a *Bradley v. United States*, ante, y a *Bell v. Maryland*, 378 U.S. 226 (1964).

posterior más favorable. Conforme a ello, la intención legislativa deberá prevalecer siempre y cuando ésta no sobrepase los límites constitucionales.

## III

A. *Cláusulas de reserva en el Código Político de Puerto Rico.*

■ Al igual que el derecho penal norteamericano, nuestro derecho estatutario también contiene cláusulas de reserva generales que aseguran la aplicación de leyes que han sido derogadas o enmendadas a aquellos hechos ocurridos durante el período en que éstas estuvieron formalmente vigentes; *esto es, las referidas cláusulas tienen idéntico propósito que las cláusulas de reserva norteamericanas.*

En Puerto Rico, las cláusulas de reserva se incorporaron, originalmente, en el Código Político. En el referido cuerpo legal hay dos cláusulas de reserva. Una está contenida en el en el Art. 44 (2 L.P.R.A. sec. 252); la otra la encontramos en el Art. 386 (2 L.P.R.A. sec. 253).

■ El Art. 44, ante, dispone que:

La revocación de una ley creando un delito, no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido con infracción de la ley así revocada, *a menos que no se declare expresamente en la ley derogatoria el propósito de impedir tal persecución o castigo.* (Énfasis suplido.)

■ Por su parte, el Art. 386, ante, establece que:

La derogación de cualquier estatuto por la Asamblea Legislativa no tendrá el efecto de exonerar o eximir de ninguna pena, embargo, confiscación o responsabilidad en que se hubiere incurrido bajo dicho estatuto, *a menos que la ley derogatoria así lo dispusiere expresamente, y se tendrá por vigente dicho estatuto,* al objeto de sostener la respectiva acción o proceso para exigir el cumplimiento de dicha pena, embargo, confiscación o responsabilidad. (Énfasis suplido.)

La jurisprudencia interpretativa de estas cláusulas, de parte nuestra, ha sido un tanto contradictoria. Mientras que en algunas decisiones este Tribunal ha aplicado una ley penal más favorable, independientemente de las cláusulas de reserva dispuestas por el Código Político, en otras se le ha dado plena eficacia.[14]

Es de notar, sin embargo, que en *Pueblo v. Tribunal de Distrito*, 70 D.P.R. 678 (1949), *reconocimos* que nuestra ley general de reserva es *sustancialmente igual* a la cláusula de reserva general contenida en los Estatutos Revisados de Estados Unidos (1 U.S.C. sec. 109), y expresamos que si la Legislatura, al derogar una ley, quiere que cesen las causas pendientes por infracción a la ley derogada, bien puede manifestarlo en la ley derogatoria, ya expresa o implícitamente, cuando de la ley misma surja que fue su propósito que no se aplicase la ley general de reserva. *Pueblo v. Tribunal de Distrito*, ante.

Indicamos en dicho caso[15] que la jurisprudencia norteamericana había expresado que la cláusula de reserva federal debía aplicarse a menos que, por una declaración expresa o por inferencia necesaria que surgiera de los términos de la ley misma considerada en su totalidad, resultara que se frustraría la intención de la Legislatura si hubieran de aplicarse sus disposiciones.[16]

En *Pueblo v. Álvarez Torres*, 127 D.P.R. 830

---

[14] Véanse, por ejemplo: *Pueblo v. Velázquez*, 35 D.P.R. 599 (1926); *Pueblo v. Valentín*, 33 D.P.R. 40 (1924); *Pueblo v. Rodríguez*, 50 D.P.R. 36 (1936); *Pueblo v. Otero*, 61 D.P.R. 36 (1942).

[15] Citando a *Hertz v. Woodman*, 218 U.S. 205 (1910).

[16] En este caso, la ley enmendatoria no contenía ninguna disposición en que de forma expresa o implícita surgiera la intención de la Legislatura de excluir la cláusula de reserva contenida en el Art. 44 del Código Político, 2 L.P.R.A. sec. 252. Sin embargo, resolvimos que no teníamos duda de que la intención de la Legislatura al aprobar la ley en cuestión fue que se archivaran las causas pendientes, ya que de su historial legislativo surgía, de modo expreso, que el propósito de ésta fue eliminar las causas pendientes y dar a todo el que no la hubiese cumplido una amplia oportunidad de acatarla. Por esta razón, resolvimos que, bajo estas circunstancias, las cláusulas de reserva generales no aplicaban.

(1991), *nos enfrentamos a la situación particular de casos pendientes de procesamiento en que la ley penal, bajo la cual se procesan, es derogada por la Asamblea Legislativa.* En este caso la Ley Núm. 34 de 19 de junio de 1987 (34 L.P.R.A. secs. 2204 y 2215),[17] por la cual sería procesado dicho menor, había expirado por mandato legislativo. Entre este momento y la aprobación de la nueva Ley Núm. 14 de 29 de junio de 1989 (34 L.P.R.A. secs. 2204 y 2215),[18] hubo un vacío estatutario. La controversia del caso giraba en torno a si la derogación de la ley anterior, vigente al momento de la comisión de los hechos, impedía que el Ministerio Público continuara con el procesamiento del recurrido como adulto. Allí expresamos que en las jurisdicciones estatales norteamericanas, la derogación —*sin una cláusula de reserva o salvedad ("savings clause") respecto a los casos pendientes*— de un estatuto penal por un organismo legislativo tenía, como regla general, el efecto de despojar al Estado del poder de continuar adelante con un procedimiento o proceso criminal pendiente ante los tribunales.[19] *Pueblo v. Álvarez Torres*, ante. Sin embargo, resulta importante destacar que en dicho caso señalamos que, en nuestras decisiones anteriores, habíamos resuelto que si la Asamblea Legislativa, al derogar una ley penal, interesaba impedir el procesamiento criminal bajo ésta de todo caso pendiente ante los tribunales a la fecha de la derogación, *estaba obligada a manifestarlo expresamente así; de lo contrario, la derogación de la ley no constituiría*

---

[17] Esta ley privaba de autoridad al Tribunal Superior, Sala de Asuntos de Menores, en relación con hechos constitutivos de asesinato y delitos relacionados alegadamente cometidos por menores de catorce años o más.

[18] Esta Ley Núm. 14 de 29 de junio de 1989 extendía el término de vigencia de la Ley Núm. 34 de 19 de junio de 1987 (34 L.P.R.A. secs. 2204 y 2215) por dos años adicionales.

[19] A estos efectos citamos a Sutherland Stat. Const. Secs. 23.28–29 (4ta ed. 1985) y a B. Witkin y F. Epstein, *California Criminal Law*, 2da ed., San Francisco, Ed. Bancroft Whitney Co., 1988, Vol. I, Sec. 69, pág. 87.

*impedimento alguno para que los procedimientos judiciales pendientes continuaran.*[20]

En resumen, en *Pueblo v. Álvarez Torres*, ante, resolvimos que la aprobación de la Ley Núm. 14, ante, *no* tuvo el efecto de alterar, afectar o, de alguna forma, terminar los procedimientos penales comenzados contra menores de edad, mayores de catorce años, que hubieran sido acusados del delito de asesinato, y delitos relacionados, al amparo de las disposiciones de la antes citada Ley Núm. 34; *sino todo lo contrario.* Indicamos que el propósito y la intención legislativa fue conservar el estado de derecho vigente bajo la mencionada Ley Núm. 34. Por tal razón, resolvimos que al no existir, en cuanto a la ley en cuestión, una manifestación expresa por parte de la Asamblea Legislativa para limitar la facultad general que le conceden al Estado los Arts. 44 y 386 del Código Político, ante, no había razón válida alguna por la cual el Ministerio Fiscal no pudiese continuar adelante con el procesamiento del recurrido bajo las disposiciones de la Ley Núm. 34, ante.

De toda la discusión anterior *podemos concluir que las cláusulas de reserva del Código Político de Puerto Rico, al igual que la cláusula de reserva federal aprobada por el Congreso de Estados Unidos, tuvieron como propósito el obtener la continuación de estatutos derogados o enmendados, de modo que éstos aplicasen con pleno vigor en lo que respecta a la conducta delictiva realizada durante su vigencia.*

B. *Cláusulas de reserva en el Código Penal de 1974*

*Al aprobar el Código Penal de 1974 y derogar el Código Penal de 1902, el legislador* —aun cuando adoptó el principio de favorabilidad del derecho continental en su Art. 4, mediante el cual las disposiciones penales aproba-

---

[20] *Pueblo v. Álvarez Torres*, ante, pág. 839; *Pueblo v. Tribunal Superior*, 84 D.P.R. 140, (1961); *Pueblo v. Tribunal de Distrito*, 70 D.P.R. 678 (1949); *Pueblo v. Arecco*, 67 D.P.R. 322 (1947).

das con posterioridad a unos hechos debían aplicar de forma retroactiva si éstas eran más favorables— *incorporó a este nuevo cuerpo legal las cláusulas de reserva norteamericanas que también se habían incorporado en los códigos penales estatales.* Al establecerlas, *se advirtió la intención del legislador de imponer limitaciones a este principio de favorabilidad.* En virtud de ello, el propio Código Penal de 1974, mediante las cláusulas de reserva, no *condicionó* su vigencia al principio de favorabilidad establecido en su citado Art. 4, sino que mantuvo la vigencia de las disposiciones del Código de 1902.

Las cláusulas de reserva del Código Penal de 1974 están constituidas en sus Arts. 281 y 282 (33 L.P.R.A. secs. 4625 y 4626). El Art. 281, ante, dispone:

> La promulgación de este Código no constituye impedimento para acusar o perseguir y castigar un hecho ya cometido en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal.

Por su parte, el Art. 282, ante, dispone:

> Las disposiciones del Art. 4 de este Código se aplicarán solamente con carácter prospectivo a partir de la fecha de su vigencia.

El Código Penal de 1974 estableció, en su Art. 281, ante, un mandato de aplicación preteractiva de las leyes penales preexistentes, independientemente del efecto favorable o desfavorable de dicho mandato. Con el propósito de evitar que la introducción del principio de favorabilidad contrarrestara ese mandato, *estableció, además, en su Art. 282, ante, una prohibición de aplicación retroactiva del Art. 4.* Bascuñán Rodríguez, pág. 74. En otras palabras, mediante el citado Art. 282 del Código Penal de 1974, se impidió que un acusado pudiese utilizar el Art. 4 para invocar las disposiciones más favorables de ese cuerpo legal.

Varias de las decisiones de este Tribunal, ante controversias sobre la aplicación del principio de favorabilidad,

*interpretaron las cláusulas de reserva del Código Penal de 1974 en este sentido.* Así, por ejemplo, en el caso *Pueblo v. Rosso Vázquez*, 105 D.P.R. 905 (1977), el acusado había resultado convicto por hechos cometidos bajo la vigencia del derogado Código Penal de 1902. Según éste, la penalidad impuesta no tenía límite máximo, mientras que el Código Penal de 1974 fijaba un límite máximo de veinticinco años de reclusión. En este caso *no* aplicamos las disposiciones más favorables en cuanto a la pena del Código Penal de 1974 de forma retroactiva, ya que los hechos delictivos y la sentencia por esos hechos había sido dictada con anterioridad a la vigencia del Código Penal de 1974. En este caso expresamos que, aun cuando en su tercer párrafo el Art. 4, ante, disponía que si durante la condena se aprobase una ley más benigna, ésta se limitará a lo establecido por ella, *lo ordenado por este cuerpo legal en su Art. 282, ante, hacía que la nueva ley fuese inaplicable, ya que la sentencia había sido dictada antes de la fecha de vigencia del Código Penal de 1974, y el referido Art. 282 disponía que su aplicación fuese prospectiva para delitos cometidos con posterioridad a su vigencia.*

Ello no obstante, en *Pueblo v. Caballero Rodríguez*, 109 D.P.R. 126 (1979), resolvimos en forma contraria; aplicamos allí el mandato del Art. 4 del Código Penal de 1974, ante, el cual apuntaba hacia la aplicación retroactiva de la ley más favorable. En este caso estaba en controversia si el Art. 33 del Código Penal de 1974 (33 L.P.R.A. sec. 3155) era una disposición más benigna, por lo cual debía aplicar ésta y no la disposición del Art. 41 del Código Penal de 1902. Al responder en la afirmativa, expresamos que por entender que la disposición vigente —el Art. 33 del Código de 1974, ante— era más benigna que el Art. 41 del Código anterior, y en obediencia al citado Art. 4 del Código vigente, a ella nos atendríamos. No obstante en este caso, aun cuando estaba en controversia la aplicación retroactiva de un artículo del Código Penal de 1974 a hechos cometidos anterior

a su vigencia, no hicimos referencia alguna a las cláusulas de reserva específicas contenidas en los Arts. 281 y 282 de este Código, ante.

En *Pueblo v. Moreno Morales I*, 132 D.P.R. 261 (1992), el apelante solicitó que le fuesen aplicadas las disposiciones más benignas de la Ley Núm. 100 de 4 de junio de 1980 (34 L.P.R.A. sec. 1044), aprobada con posterioridad a la comisión de los hechos, en armonía con el Art. 4 del Código Penal, ante. En este caso, *no obstante lo resuelto en Pueblo v. Caballero Rodríguez*, ante, *resolvimos* que las disposiciones del Art. 4 del Código Penal, conforme al Art. 282, ante, *se aplicarían con carácter prospectivo, a partir de la fecha de su vigencia.* En vista de que la Sec. 4 de la Ley Núm. 100, ante, 34 L.P.R.A. sec. 1044 n., disponía que ésta comenzaría a regir nueve meses después de su aprobación, y que sus disposiciones se aplicarían a personas juzgadas por hechos delictivos que se cometieran a partir de la fecha de su vigencia, resolvimos que al ocurrir los hechos delictivos antes de la vigencia de esa ley, a éstos no le aplicaban las disposiciones más benignas de la Ley Núm. 100, ante, de forma retroactiva en virtud del Art. 282 del Código Penal, ante, y de la disposición de la misma ley a los efectos de que ésta sólo tuviese aplicación prospectiva.[21] De este

---

[21] De igual forma, este Tribunal emitió una *resolución* en el caso *Pueblo v. Villafañe Contreras*, 142 D.P.R. 839 (1997), mediante la cual denegamos la moción de reconsideración presentada por los apelantes en la que alegaban que debíamos aplicar las disposiciones de la Resolución Conjunta Núm. 514 aprobada por la Asamblea Legislativa. Ésta les concedía un (1) año de moratoria a los profesionales de la Naturopatía para que pudieran continuar con su práctica sin estar sujetos a ser procesados en lo criminal por ejercicio ilegal de la medicina durante ese período. En dicha resolución —aun cuando analizamos el principio de favorabilidad contenido en el Art. 4 del Código Penal de 1974 (33 L.P.R.A. sec. 3004)— dispusimos que esa disposición estatutaria *no tendría aplicación retroactiva* y confirmamos las condenas impuestas a los apelantes por el delito de la práctica ilegal de la Medicina. Indicamos que la mencionada Resolución Conjunta no estaba vigente al momento de imponer la sentencia a los acusados y que lo decisivo al determinar la aplicación de la ley era la fecha en que fue dictada la sentencia del tribunal de instancia, a tono con lo resuelto en *Pueblo v. Rosso Vázquez*, ante. Señalamos, además, que la Asamblea Legislativa, al aprobar la disposición en cuestión, *nada* dispuso con respecto a que la nueva ley tuviese efecto retroactivo, y que si el legislador hubiera querido extender el beneficio de la moratoria a los apelantes, *así lo hubiese dicho expresamente* o le hubiese dado fecha de vigencia retroactiva.

modo, reconocimos también la validez de lo que pueda establecer una cláusula de reserva contenida en una ley penal especial en cuanto a su aplicación retroactiva.

De la discusión jurisprudencial anterior —la cual, no hay duda, ha sido conflictiva— surge que en nuestra jurisdicción se han interpretado las cláusulas de reserva del Código Penal de 1974 como una manifestación expresa del legislador para impedir la aplicación retroactiva de una ley, aun cuando ésta resulte ser más beneficiosa para un acusado. *Por consiguiente, es razonable concluir que en nuestra jurisdicción la aprobación de cláusulas de reserva opera como una limitación al principio de favorabilidad; principio que, al carecer de rango constitucional, está dentro de la prerrogativa absoluta del legislador.*

## IV

Este caso requiere que acometamos la encomienda de resolver si a unos hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974 les aplican —de forma retroactiva— las disposiciones del nuevo Código Penal de 2004. Esto requiere, a su vez, que resolvamos si mediante las disposiciones del Art. 308 del nuevo Código Penal , ante, el legislador impidió su aplicación retroactiva en todo aquello que beneficiara al acusado.

La aprobación de un nuevo Código Penal, mediante la Ley Núm. 149 de 18 de junio de 2004 (33 L.P.R.A. sec. 4629 *et seq.*), tuvo el efecto de derogar el Código Penal de 1974. En lo pertinente a este caso, este nuevo cuerpo legal dispone, en su Art. 8, *ante, que la ley penal aplica a hechos realizados durante su vigencia.*[22]

---

[22] La vigencia del Código Penal de 2004 se define en el Art. 314, el cual dispone que:

"Este Código empezará a regir el 1ro de mayo de 2005, con excepción de los Artículos 312 y 313." 2004 Leyes de Puerto Rico 990.

Por otro lado, el Art. 9 dispone:

La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:

(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.

En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. 33 L.P.R.A. sec. 4637.

■ Las mencionadas disposiciones estatutarias tienen su origen en el citado Art. 4 del Código Penal de 1974 derogado. El Art. 8 del Código Penal de 2004, ante, formula la regla general de *aplicación prospectiva* de la ley penal o la prohibición de leyes *ex post facto*, según requerido por el Art. II, Sec. 12 de nuestra Constitución, L.P.R.A., Tomo 1. El citado Art. 9 dispone —al igual que el Art. 4 del anterior Código 7 de 1974— la *aplicación retroactiva* de la ley penal más beneficiosa para el acusado, que sea aprobada al momento de su procesamiento, al imponerle sentencia o durante su condena. D. Nevares-Muñiz, *Nuevo Código Penal de Puerto Rico, comentado*, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2004–2005, págs. 9–10.

■ Tal y como señaláramos anteriormente, el principio de favorabilidad establece que si una ley penal es aprobada con posterioridad a la comisión de unos hechos delictivos, y sus efectos resultan en un tratamiento más favorable para un acusado, ésta debe aplicarse de forma retroactiva, de modo que el acusado disfrute de sus

beneficios. Como también indicáramos previamente, el principio de favorabilidad es una excepción al principio de que la ley aplicable a unos hechos es aquella vigente al momento de su comisión. Por tal razón, al analizar la aplicación retroactiva de una ley, *hay que atender a la intención legislativa al aprobarla.*

Según expresamos, *el principio de favorabilidad tiene un rango meramente estatutario*, por lo cual el legislador puede, legítimamente, imponer *restricciones* a éste *y ordenar expresamente la aplicación de leyes penales, que hubieren sido derogadas o enmendadas, siempre que hubiesen estado vigentes al momento de la comisión de los hechos.*

La profesora Nevares-Muñiz señala que, al momento de analizar si una nueva ley penal debe aplicarse de forma retroactiva, "se comparará la ley vigente al momento de cometer el delito con la ley nueva y si ésta es más beneficiosa se aplicará retroactivamente, *excepto que una cláusula de reserva lo proh[í]ba."* (Énfasis suplido.) Nevares-Muñiz, *op. cit.*, pág. 10. Al igual que el Código Penal de 1974, en sus Arts. 281 y 282, ante, *el Código Penal de 2004 contiene una cláusula de reserva. Por esta razón, los Arts. 8 y 9 del nuevo Código Penal, ante, tienen que interpretarse conjuntamente con la cláusula de reserva que constituye el Art. 308. Nevares-Muñiz, op. cit., pág. 390.*

Tomando en cuenta la discusión anterior sobre la interpretación jurisprudencial de las cláusulas de reserva del Código Político y del Código Penal de 1974, *específicamente atendemos la cláusula de reserva adoptada por el legislador en el Art. 308 del Código Penal de 2004* (33 L.P.R.A. sec. 4935).

La *cláusula de reserva* contenida en el Art. 308 del nuevo Código dispone que:

> *La conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí*

*derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho.*

Si este Código suprime algún delito no deberá iniciarse el encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. El cambio de nombre de un delito no significa que el tipo delictivo ha quedado suprimido. (Énfasis suplido.)

Conforme a la profesora Nevares-Muñiz,[23] el propósito del referido artículo, al establecer una cláusula de reserva, *es que la conducta realizada con anterioridad a la vigencia del nuevo y vigente Código en violación a alguna disposición del Código Penal derogado, o cualquier otra ley especial de carácter penal, se regirá por las leyes vigentes al momento del hecho, con la sola excepción contemplada en el segundo párrafo del mencionado artículo, la cual establece que si el Código suprime algún delito no se deberá encausar a la persona por ese delito y que cualquier acción en trámite deberá sobreseerse.* Nevares-Muñiz, *op. cit.*, pág. 389. La referida autora expresa que el efecto de una cláusula de reserva es permitir la "ultra actividad"[24] de la ley derogada por hechos realizados durante su vigencia, *excepto* cuando se trate de la supresión un delito.[25] Nevares-Muñiz, *op. cit.*, pág. 106.

Se desprende *claramente* de una lectura del referido Art. 308, ante, *que el legislador pretendió mantener la vigencia del Código Penal de 1974 para todos aquellos delitos cometidos según éste.* A esos efectos, *expresamente dispuso* que estos delitos se regirían por la ley vigente al momento de su comisión, por lo cual *no* puede sostenerse

---

[23] Asesora de la Asamblea Legislativa respecto al Código Penal de 2004.

[24] El concepto "ultra actividad", utilizado por la profesora Nevares-Muñiz, es cónsono con el término "preteractividad" utilizado por el profesor Bascuñán Rodríguez, y se refiere —al igual que éste— a la aplicación de una ley penal a los hechos cometidos durante su vigencia aun cuando dicha ley haya sido enmendada o derogada.

[25] Conforme lo anterior, expresa la profesora Nevares-Muñiz que los citados Arts. 308 y 9 atienden la situación en que la ley nueva quita carácter delictivo a un hecho anteriormente reprimido. En estos casos, el referido Art. 308 dispone para la liberación de la persona y extinción de la acción penal, por lo cual las cláusulas de reserva del Código Político no aplicarían a partir de la vigencia del Código de 2004.

que la intención legislativa fue que el nuevo Código tuviese aplicación retroactiva.

Es menester enfatizar que la redacción *original* de dicho artículo, según el Proyecto del Senado 2302, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, 12 de mayo de 2003, pág. 122, sí proveía expresamente la aplicación retroactiva de aquellas disposiciones que resultaran en un tratamiento más favorable al imputado. Este proyecto *disponía* lo siguiente:

> La conducta realizada con anterioridad a la vigencia de este Código, en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho. *Sin embargo, todas las disposiciones de este Código le serán aplicables si resulta de dicha aplicación un tratamiento más favorable al imputado o al sentenciado.* Si este Código suprime algún delito no deberá iniciársele encausamiento, las acciones en trámite deberán sobreseerse, y las sentencias condenatorias deberán declararse nulas y liberar a la persona. (Énfasis suplido.) Íd.

La redacción original del Art. 308, ante, al disponer expresamente que las disposiciones del nuevo Código tuvie ran efecto retroactivo en todo aquello que beneficiara al acusado, fue *objeto de preocupación* en los debates que antecedieron a la aprobación del nuevo Código Penal. De hecho, el Departamento de Justicia se opuso a ello.

La Comisión de lo Jurídico del Senado *enmendó* el referido artículo. Sobre este particular, en el Informe de la referida Comisión se expresó:

> Esta Comisión acoge la recomendación de la Secretaria de Justicia de que se enmiende el P. de la S. 2302 para que en el Artículo 30[8] *se elimine* la oración "[s]in embargo, las disposiciones de este Código le serán aplicables si resultara de dicha aplicación un tratamiento más favorable al imputado o al sentenciado." *La intención del legislador es que este Código aplique a delitos cometidos con posterioridad a su vigencia, salvo en cuanto a lo dispuesto en el segundo párrafo de ese artículo para el caso en que este Código suprima algún delito.* (Énfasis suplido.) Informe de la Comisión de lo Jurídico del Senado de 22 de junio de 2003.

 Como vemos, el nuevo Código Penal contiene, *en sí mismo*, una cláusula de reserva en su Art. 308, ante, la cual responde a la *clara intención legislativa* de que la conducta realizada durante la vigencia del Código Penal derogado se rija por éste. *El efecto de dicha cláusula de reserva es que aquellos actos delictivos ocurridos durante la vigencia del derogado Código Penal se les debe aplicar dicho cuerpo legal como si todavía estuviese vigente.*[26]

## V

Lo anterior, sin embargo, no dispone del todo de esta controversia. Nos falta por considerar y resolver el planteamiento del peticionario González Ramos a los efectos de que, al disponer el Art. 308 del Código Penal de 2004, ante, que la conducta delictiva ocurrida con anterioridad a su vigencia se regirá por las leyes vigentes al momento de la su comisión, ello significa que bajo las disposiciones del referido Art. 4 del Código Penal de 1974, que establece que se debe aplicar la ley más favorable, debe aplicársele el nuevo Código de forma retroactiva. *No le asiste la razón.*

 La interpretación lógica y razonable de todas las disposiciones estatutarias aquí en controversia es a los efectos de que la *cláusula de reserva* contenida en el Art. 308 del Código de 2004, ante, la cual constituye una *limi-*

---

[26] En reiteradas ocasiones, este Tribunal ha expresado que la obligación fundamental de los tribunales es imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley. Dicho de otra manera, el fin principal de la interpretación estatutaria es descubrir la intención del legislador y su propósito social para hacer que prevalezca este propósito y evitar interpretaciones que conduzcan a resultados irrazonables. Véanse: Art. 19 del Código Civil, 31 L.P.R.A. sec. 19; *Otero de Ramos v. Srio. de Hacienda*, 156 D.P.R. 876 (2002); *Irizarry v. J & J Cons. Products Co., Inc.*, 150 D.P.R. 155 (2000); *Piñero v. A.A.A.*, 146 D.P.R. 890 (1998); *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408 (1998); *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759 (1990).

En consecuencia, cuando el lenguaje de una ley es claro y la intención legislativa es patente, este Tribunal está obligado a respetar la voluntad legislativa. Los tribunales no pueden disponer algo que el legislador no intentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. *Raimundi v. Productora*, 162 D.P.R. 215 (2004); *Mun. de San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873 (1996); *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996).

*tación* al principio de favorabilidad contenido en el Art. 4 del Código de 1974, ante, *impide que el nuevo Código pueda ser aplicado retroactivamente como ley penal más favorable.*

Ello así, ya que la disposición del citado Art. 308, a esos efectos, *no* viola precepto constitucional alguno, ya que, según hemos expresado, el principio sobre la aplicación retroactiva de la ley penal más favorable no tiene rango constitucional, quedando dentro de la discreción del legislador la imposición de restricciones a este principio. Dicho de otra forma, la aplicación retroactiva del Código Penal en cuanto pueda favorecer al acusado queda dentro de la discreción de la Asamblea Legislativa, *por lo cual el acusado peticionario en este caso no tiene un derecho constitucional a la aplicación retroactiva de éste.*

*Resolvemos*, en consecuencia, que la cláusula de reserva contenida en el referido Art. 308 del Código Penal de 2004 *impide* que un acusado por hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974 pueda invocar —vía el Art. 4, ante—(27) las disposiciones del nuevo Código Penal. En virtud de ello, *a todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal de 1974 les aplicará el referido cuerpo legal en su totalidad. Ello así, ya que la clara intención legislativa es a los efectos de que el nuevo Código Penal tenga, únicamente, aplicación prospectiva.*

Ahora bien, y como indicáramos anteriormente, constituye una *excepción* a lo anteriormente pautado la situación en que el nuevo código *suprime* un delito anteriormente vigente, situación contemplada en el segundo pá-

---

(27) De igual forma, la cláusula de reserva tuvo el efecto de impedir que un acusado utilizara las disposiciones del Art. 9 del nuevo Código Penal, 33 L.P.R.A. sec. 4637, para que fuese aplicado a hechos cometidos anterior a su vigencia, *ya que la intención legislativa fue que las disposiciones del referido artículo sólo se aplicaran prospectivamente a partir de la vigencia del nuevo Código.*

rrafo del citado Art. 308, ante.(²⁸) Apoyándose en esta disposición, el peticionario González Ramos sostiene que procede el sobreseimiento estatutario de los cargos debido a que el delito de asesinato estatutario quedó suprimido por el Código Penal de 2004. *No le asiste la razón.*

En primer lugar, las disposiciones a esos efectos del Código Penal del 2004 son diáfanas. Por otro lado, la intención legislativa, o el historial legislativo, respecto a este punto no da margen a duda alguna. A esos efectos, vale la pena destacar que en el Informe de la Comisión de lo Jurídico del Senado, respecto al P. del S. 2302, dicha Comisión específicamente hizo constar que con relación al Art. 106 del Código Penal de 2004, ante, *se mantenía la figura del asesinato estatutario*, incorporándose, sin embargo, la exigencia de que el asesinato se cometiese como "consecuencia natural" de los delitos base que se mencionan. Específicamente, con relación a dichos delitos base, la Comisión expresó que en el inciso (b) del Art. 106 se mantenían los delitos base del asesinato estatutario, tipificado por el Art. 83 del Código Penal de 1974 (33 L.P.R.A. sec. 4002), "simplificando el nombre al correspondiente a los nuevos tipos que se proponen en este Código y añadiendo otros".

Como vemos, no hay duda de que el asesinato estatutario se mantiene tipificado en el nuevo Código Penal. En otras palabras, la modalidad de asesinato estatutario *no* ha sido suprimida por el Código Penal de 2004; *meramente hubo un cambio en la terminología del delito —Art. 106, ante— de asesinato estatutario*, lo cual de ninguna forma significa que el asesinato estatutario no se encuentre codificado en el nuevo Código Penal de 2004. Siendo ello así, al

---

(²⁸) El segundo párrafo del referido artículo dispone que si algún delito quedase suprimido por el nuevo Código, no se deberá encausar a la persona por ese delito, que cualquier acción en trámite deberá sobreseerse y que las sentencias condenatorias deberán declararse nulas. Ello responde a que cuando el Estado le quita el carácter de delito a un hecho que anteriormente era delictivo, ello es señal de que ya no tiene interés en castigarlo y, por lo tanto, nadie deberá ser castigado por un hecho que, según una ley posterior, no constituye delito. D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2004–2005, págs. 9–10, citando al tratadista G. Maggiore, *Derecho Penal*, Bogotá, Ed. Temis, 1961, Vol. I, pág. 199. Véase *Pueblo v. O'Neill*, 165 D.P.R. 370 (2005).

peticionario González Ramos *no* le aplica la disposición del segundo párrafo del Art. 308, ante, en cuanto a los delitos suprimidos, *por lo que procede juzgarlo por el referido delito bajo las disposiciones del Código Penal de 1974.*([29])

Al determinar que aplica el Código Penal de 1974 a los hechos ante nuestra consideración, no emitimos juicio alguno sobre los planteamientos del acusado con respecto a que el asesinato estatutario codificado en el nuevo Código Penal constituye o no una ley penal más favorable.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

---

([29]) En vista de que en este caso los hechos serán juzgados por el Código Penal de 1974, se hace innecesario discutir lo que constituye la frase "consecuencia natural", reservándonos dicha discusión para un caso futuro, en el que los hechos se cometan bajo la vigencia del nuevo Código Penal.