EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>Heriberto Padín Rodríguez<br><br>Peticionario | Certiorari<br><br>2006 TSPR 165<br><br>169 DPR ____ |

Número del Caso: CC-2006-302

Fecha: 10 de noviembre de 2006

Tribunal de Apelaciones:

                    Región Judicial de Arecibo – Panel VII


Juez Ponente:
                Hon. Andrés Salas Soler


Abogado de la Parte Peticionaria:

                Lcdo. Félix A. Cifredo Cancel

Oficina del Procurador General:

                Lcdo. Salvador J. Antonetti Stutts
                Procurador General


Materia: Favoralidad de Sentencia

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        vs.                          CC-2006-302      Certiorari

Heriberto Padín Rodríguez

    Peticionario

RESOLUCIÓN

San Juan, Puerto Rico, a 10 de noviembre de 2006.

A la segunda moción de reconsideración, no ha lugar. Aténgase a lo resuelto por este Tribunal.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri reconsideraría. La Juez Asociada señora Fiol Matta emitió Voto Disidente en Reconsideración.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico
        Recurrido

                                        *Certiorari*

        v.

                            CC-2006-302

Heriberto Padín Rodríguez
        Peticionario



Voto disidente en reconsideración emitido por la Jueza Asociada señora FIOL MATTA



        En San Juan, Puerto Rico, a 10 de noviembre de 2006.

        Una vez más la mayoría de este Tribunal decide no expedir un auto de *certiorari* sobre el principio de favorabilidad, negándose a revisar al foro apelativo y avalando de esa forma una interpretación de lo que resolvimos en <u>Pueblo v. González Ramos</u>, 2005 T.S.P.R. 134, que es, a mi entender, errada y contraria a nuestra política constitucional de propender a la rehabilitación de los confinados en Puerto Rico. A continuación, explico las razones que me llevan a diferir del resultado al que se llega de denegar el recurso presentado.

I

Antes que todo, debe tenerse claramente en cuenta la controversia presentada ante este Tribunal. El peticionario Heriberto Rodríguez Padín fue acusado del delito de tentativa de apropiación ilegal agravada, según prescribía el artículo 166 del Código Penal de 1974, al intentar apropiarse de bienes muebles ajenos por un valor de $232 el 25 de febrero de 2005. Hizo alegación de culpabilidad, el 31 de mayo de 2005, luego de lo cual el Tribunal de Primera Instancia le condenó a cumplir una pena de reclusión de noventa (90) días, aplicando retroactivamente de esta manera la pena más benigna que ofrece el Código Penal de 2004.

Inconforme con dicha Sentencia, el Ministerio Público acudió ante el Tribunal de Apelaciones alegando que el tribunal de instancia había errado al aplicar retroactivamente las disposiciones del nuevo Código Penal, en contravención a la cláusula de reserva de dicho Código y a los resuelto por este Tribunal en Pueblo v. González Ramos, supra. El Tribunal de Apelaciones revocó la sentencia recurrida y ordenó al Tribunal de Primera Instancia a resentenciar al peticionario bajo las disposiciones pertinentes del Código Penal de 1974, esto es, una pena de reclusión mínima de tres años, fija de cinco, o máxima de seis años. Aplicando restrictivamente nuestra Opinión en Pueblo v. González Ramos, supra, resolvió que como el delito fue cometido durante la vigencia del Código anterior, debía ser juzgado de conformidad con ese cuerpo legal.

El señor Padín Rodríguez acudió entonces ante este Tribunal solicitando la revocación del dictamen del

tribunal apelativo. El 26 de mayo de 2006, una mayoría de este Tribunal denegó su petición de *certiorari* y posteriormente declaró no ha lugar a una moción de reconsideración del peticionario. De igual modo ha denegado la segunda moción de reconsideración. En las ocasiones anteriores me había limitado a hacer constar que expediría el *certiorari* solicitado. Sin embargo, siento la obligación y necesidad de expresar las razones que me llevan a diferir de la actuación de la Mayoría del Tribunal en éste y en aquellos casos similares.

Desde que resolvimos <u>Pueblo v. González Ramos</u>, supra, el 16 de septiembre de 2005, este Tribunal ha denegado autos de *certiorari* presentados por personas convictas bajo las mismas circunstancias del peticionario. Este grupo de personas se caracteriza por haber sido convictas bajo el Código Penal de 1974, pero sentenciadas cuando el nuevo Código Penal de 2004 ya era vigente, de manera que <u>*al momento de ser sentenciadas*</u> el Código Penal vigente expresaba una valoración diferente a la anterior recogida en la <u>*pena*</u> correspondiente. Al no expedir el auto en estos casos, se sostiene la aplicación de forma rigurosa y absoluta de nuestros pronunciamientos en <u>Pueblo v. González Ramos</u>, supra, por el Tribunal de Apelaciones. Entiendo, por tanto, que debemos precisar el alcance de lo resuelto en aquel caso.

II

En <u>Pueblo v. González Ramos</u>, supra, resolvimos que, salvo en el caso de la supresión de un delito, todos los delitos perpetrados durante la vigencia del Código Penal de 1974 serán juzgados bajo las disposiciones de ese Código, según la intención legislativa evidenciada en el artículo 308 del Código Penal de 2004, que constituye una

cláusula de reserva. Indicamos que dicha cláusula dispone para que estos actos delictivos se rijan por la ley vigente a su comisión.

Ahora bien, aunque nos expresamos en términos amplios sobre la intención legislativa contraria a la aplicación retroactiva del nuevo Código, salvo la supresión de algún delito, la realidad es que los hechos de ese caso no nos requirieron analizar detalladamente el contenido de las cláusulas de reserva en Puerto Rico, ni sus límites. La controversia en Pueblo v. González Ramos, supra, giraba en torno a la aplicación retroactiva de la ley penal más favorable (el nuevo Código Penal) que determina los elementos constitutivos del delito, es decir la tipicidad. El recurso que hoy este Tribunal decide no atender, en cambio, se refiere a la posible aplicación retroactiva de la ley penal más favorable en cuanto a la pena que ha de aplicarse a cada delito.

En este sentido, entiendo que la cláusula de reserva del Código Penal de 2004 no niega la posibilidad de que pueda aplicarse en este caso la pena más favorable. Ello es así en la medida en que la pena puede considerarse como un hecho institucional, que no necesariamente es correlativa al tipo delictivo que castiga. No debemos olvidar que el tipo delictivo funciona como una norma prohibitiva de conducta, mientras que la pena equivale a una norma de sanción.

La doctrina dogmática penal suele dividir en dos elementos las normas jurídicas que conforman el Derecho Penal. Por un lado, se encuentra el "supuesto de hecho" que prescribe la conducta delictiva que se busca prohibir y prevenir. Por otro lado, tenemos la "consecuencia jurídica", que es el deber de imponer una pena o medida de

seguridad como resultado de la comisión de un supuesto de hecho delictivo. S. Mir Puig, Derecho Penal: Parte General, 5ta edición, Barcelona, Reppertor S.L., 1998, págs. 28-32; F. Muñoz Conde & M. García Arán, Derecho Penal: Parte General, 4ta edición, Valencia, Ed. Tirant Lo Blanch, 2000, págs. 34-36. Es también por esta razón que ordinariamente el hecho delictivo y la pena se encuentran distribuidos en diferentes artículos de un código penal. Muñoz Conde & García Arán, op. cit., pág. 37. Comparto esta visión. El tipo delictivo como norma de conducta es un elemento del Derecho Penal que antecede conceptualmente y se puede distinguir de la pena como norma de sanción. Esta última constituye una consecuencia jurídica de la consecución de un supuesto de hecho bajo un tipo delictivo.

Esta dicotomía se basa en la consideración de estos elementos —hechos delictivos y pena— que requieren el estudio de diferentes factores al ser considerados. Las normas de conducta, o sea los hechos delictivos, se estudian de acuerdo a las teorías jurídicas de la antijuricidad, tipicidad, punibilidad, actividad, participación, imputabilidad y culpabilidad. En cambio, las normas de sanción requieren que se consideren factores como la naturaleza del delito cometido, los medios empleados, extensión del daño y peligro causado, las circunstancias personales y conducta del trasgresor, y la conducta de la víctima. Art. 60 Cód. Pen. 1974. Por tanto, la pena como consecuencia del delito requiere un análisis multidimensional jurídico y sociológico, sustentado en las diferentes teorías de la función de la pena, que combinan concepciones retribucionistas, de prevención, de realización de la justicia y de rehabilitación y

resocialización. Mir Puig, op. cit., págs. 46-66; R. Maurach, Tratado de Derecho Penal, Barcelona, Ediciones Ariel, 1962, Tomo I, págs. 62-83.

A base de esta distinción, entiendo que la cláusula de reserva del Código Penal de 2004 sólo ordena que la ley vigente al momento de la comisión de un delito sea la que determine la norma de conducta y el supuesto delictivo. Sin embargo, esta cláusula no impide la aplicación retroactiva de la pena más favorable a un acusado. De esta forma, en la transición entre los dos Códigos Penales, puede castigarse por el tipo delictivo del Código derogado vigente al momento de la comisión de los hechos, pero aplicarse una pena más favorable del nuevo Código, sin contrariar las cláusulas de reserva, en cuanto la aprobación de una nueva pena refleja también la intención legislativa respecto a la valorización de la conducta delictiva. Examinemos brevemente los fundamentos que dan lugar a esta conclusión.

III

Las cláusulas de reserva no deben interpretarse mecánicamente ni de manera abstracta y formal, desatendiendo otros factores que contribuyen a descubrir la intención legislativa y lograr la más manifiesta justicia. Cuando la Asamblea Legislativa aprobó el nuevo Código Penal tuvo la necesidad de formular una valoración social de la conducta que buscaba sancionar. Al fijar las penas, se tomaron en consideración, entre otros, los factores de prevención y de rehabilitación. *En este contexto, no procede aplicar penas por razones formales, ignorando el hecho de que las mismas han quedado obsoletas.*

Cuando una nueva ley refleja que la Asamblea Legislativa ha desvalorizado un hecho delictivo, sería un sinsentido aplicar a ese supuesto las consecuencias jurídicas que han dejado de considerarse como adecuadas. Muñoz Conde & García Arán, op. cit., pág. 154. Imponer, pues, una pena que el legislador considera inadecuada por su severidad implicaría un exceso por parte del Estado, contrario a la garantía constitucional contra castigos crueles e inusitados y el principio de proporcionalidad inmanente en nuestro sistema penal. Desde Pueblo v. Pérez Zayas, 116 D.P.R. 197, 201 (1985), hemos indicado que estos preceptos "requiere[n] penas proporcionales a la severidad de la conducta delictiva, penas no arbitrarias, la imposición, en fin, de la pena menos restrictiva de libertad para lograr el fin por el cual se impone".

En casos como el de autos, aplicar la pena más favorable no es contrario a nuestras expresiones en Pueblo v. González Ramos, supra, ni a la cláusula de reserva del Código Penal. La cláusula de reserva contenida en el artículo 308 del nuevo Código Penal es de carácter general, y se refiere escuetamente a los términos de conducta, delito y tipo delictivo. Dispone específicamente que "[l]a conducta realizada con anterioridad a la vigencia de este Código en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal se regirá por las leyes vigentes al momento del hecho" Art. 308 Cód. Pen. 2004, 33 L.P.R.A. sec. 4935 (énfasis suplido).

Nada dice ésta cláusula sobre las penas. Por el contrario, cuando en otras jurisdicciones se ha querido incluir las penas en sus cláusulas de reserva se ha hecho específicamente. En el estado de Connecticut, por ejemplo,

la cláusula de reserva dispone expresamente lo siguiente: "The repeal of any statute defining or prescribing *the punishment* for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefore, unless expressly provided in the repealing statute that such repeal shall have that effect" (énfasis suplido). Otras jurisdicciones con cláusulas similares incluyen a la República Federal de Alemania, el Estado de Missouri, el Estado de Nevada; el Estado de Texas, el Estado de Washington. Véase STRAFGESETZBUCH § 2; MO. ANN. STAT. § 1.160; NEV. REV. STAT. § 169.235; TEX. PENAL CODE § 1.03; WASH. REV. CODE ANN. § 10.01.040. Incluso, antes de 2004 las cláusulas de reservas de los códigos penales de Puerto Rico reconocían expresamente estas particularidades. El Código Penal de 1937 disponía en su artículo 558 que: "[t]odo acto u omisión que empezare antes de la promulgación de este Código, podrá investigarse, perseguirse y *castigarse* como si no se hubiere aprobado dicho Código" (énfasis suplido). A su vez, el artículo 280 del Código Penal de 1974 expresaba: "[l]a promulgación de este Código no constituye impedimento para acusar o perseguir y *castigar* un hecho ya cometido en violación a las disposiciones del Código Penal aquí derogado o de cualquier otra ley especial de carácter penal" (énfasis suplido). Es decir, las cláusulas de reserva de los códigos anteriores sí prohibían de forma expresa la aplicación retroactiva de los "castigos", o sea las penas y medidas de seguridad, dispuestos en las leyes posteriores.

Si comparamos las cláusulas de reserva de los códigos de 1974 y 2004 notamos que la intención de la Asamblea Legislativa no era la de aplicar una pena revocada a casos

que fueran resueltos después de la vigencia del nuevo Código. De lo contrario, se hubiese hecho una referencia expresa a las penas o al castigo de un delito, como se hizo en 1974. Una lectura razonable del artículo 308 del nuevo Código indica que la intención de los legisladores era la de evitar que crímenes cometidos bajo el Código anterior fuesen juzgados por los nuevos tipos penales establecidos. Sin embargo, es cuestionable asumir que la Asamblea Legislativa tuvo la intención de castigar más severamente por conductas y hechos delictivos que ya no tienen la misma valorización social en cuanto a las penas y medidas de seguridad necesarias para su prevención general y para la rehabilitación del delincuente.

Al aprobar un nuevo Código Penal con penas disminuidas para determinados delitos, la Asamblea Legislativa hizo una determinación expresa de que la pena anterior era muy severa o innecesaria como castigo. Consideró en ese momento que la nueva pena es suficiente castigo para hacer valer los principios generales de la sanción criminal. Entiendo que aplicar una pena más severa después de semejante pronunciamiento legislativo nos llevaría a concluir que el fin de la misma es meramente retributivo, contrario a los postulados modernos del Derecho Penal y de las disposiciones de nuestra Constitución que protegen la dignidad del ser humano y promueven la rehabilitación de los trasgresores. Sería un sin sentido concluir lo contrario, cuando incluso la Asamblea Legislativa amplió el alcance del principio de favorabilidad que dispone el nuevo Código Penal.

Las disposiciones sobre la "aplicación de la ley más favorable" contenidas tanto en el Código Penal de 1974 como en el de 2004, hacen mención específica a la

aplicación de "una ley más benigna en cuando a *la pena*". Incluso en el nuevo Código Penal se permite expresamente aplicar la ley penal más favorable en el momento de "procesar al imputado o imponerle la sentencia". Esto hace más patente la intención legislativa al aprobar el artículo 308 del Código Penal de 2004 de no limitar el principio de favorabilidad en cuanto a las penas durante el proceso de sentencia. La interpretación contraria infringe los principios de utilidad de la intervención penal, de humanidad de las penas, de proporcionalidad y de rehabilitación que limitan el *ius puniendi* del Estado. Estos principios impiden que "una sentencia judicial discrepe abiertamente de la valoración legislativa vigente *al momento de dictarla*, cuando el hecho aparece como menos necesitado de pena o no necesitado del todo". Antonio Bascuñán Rodríguez, *La aplicación de la ley penal más favorable*, 69 Rev. Jur. UPR 29, 41 (2000) (énfasis suplido).

Por último, cabe destacar que las normas internacionales sobre derechos humanos han elevado a nivel de máxima la aplicación retroactiva de la pena más favorable. Tanto el Pacto Internacional de Derechos Civiles y Políticos de 1966 y la Convención Americana sobre Derechos Humanos de 1969 establecen que a los convictos por delito se les debe aplicar la pena más favorable si una ley posterior dispone para ello.[1] No

---

[1] El artículo 15.1 del Pacto Internacional de Derechos Civiles y Políticos de 1966 establece que:

Nadie será condenado por actos u omisiones que en el momento de cometerse no fueran delictivos según el derecho nacional o internacional. Tampoco se impondrá pena más grave que la aplicable en el momento de la comisión del delito. *Si con posterioridad a la comisión del delito la ley dispone la imposición*

debemos ignorar que los sistemas judiciales nacionales estamos obligados a respetar estas normas aceptadas por la comunidad internacional como garantías mínimas de la libertad del individuo, que no admiten acuerdo en contrario y limitan el poder policial estatal. Los derechos fundamentales limitan la autoridad punitiva del Estado y obligan a éste a crear las condiciones necesarias para su mayor protección. Enrique Bacigalupo, _Principios Constitucionales de Derecho Penal_, Buenos Aires, Editorial Hammurabi, 1999, pág. 13. De esta forma, nos encontramos atados al principio _pro homine_ que se refleja en estos instrumentos internacionales que tienen como norte la máxima protección de la libertad humana.

IV

En el caso de autos, las particularidades que hemos discutido alcanzan su mayor expresión. El delito que cometió el acusado, el de apropiación ilegal, fue reconfigurado en cuanto a las cuantías, para atender el valor presente de la moneda. En el Código Penal de 1974 la apropiación ilegal de bienes valorados en más de $200.00 implicaba la comisión de un delito grave con una pena de reclusión mínima de 6 años que podría ser aumentada a 12 años. Sin embargo, el nuevo Código Penal dispone que la apropiación ilegal de bienes con un valor de hasta $500.00 será un delito menos grave con una pena de reclusión no mayor de 90 días.

Aunque la modificación de estas cuantías sea para atender los efectos de la inflación, no debemos pasar por alto que ello a su vez implica una revalorización social

---

_de una pena más leve, el delincuente se beneficiará de ello_. (énfasis suplido).

del delito de apropiación ilegal. El disminuir drásticamente la pena de la apropiación ilegal de bienes con valor de $232, de 6 años a 90 días, denota que la Asamblea Legislativa entendió que este delito debía ser castigado de forma menos severa. El hecho de establecer una pena proporcionada al delito, de por sí retrata la importancia y la valoración social del daño que el legislador atribuyó a dicha conducta.

En el presente caso, el nuevo Código Penal entró en vigor *antes* de que el señor Padín Rodríguez fuese sentenciado. La Cláusula de reserva del Código Penal de 2004 no excluye que pueda aplicarse la pena más favorable a los acusados que fueran sentenciados después de que entrara en vigencia el nuevo Código. Por eso, no veo impedimento para aplicar la pena más favorable al acusado bajo las circunstancias antes descritas.

Por las razones antes expuestas reconsideraría, expediría el auto de *certiorari* solicitado y revocaría la sentencia recurrida.

Liana Fiol Matta
Jueza Asociada