El Juez Asociado Señor Kolthoff Caraballo
emitió la opi-nión del Tribunal.
Mediante el presente caso interpretamos la reciente Ley Núm. 243-2011, que introdujo importantes enmiendas a la Ley Núm. 266-2004, conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores.
Así, determinamos el efecto de algunas de esas enmien-das sobre una persona cuyo nombre fue inscrito en el refe-rido registro, como consecuencia de haberse declarado culpable por el delito de maltrato de menores que establece el Art. 75 de la Ley Núm. 177, infra, pero cuya causa fue sobreseída después de haber cumplido con el programa de desvío que provee el Art. 80 de la propia Ley Núm. 177, infra. Además, pautamos si tales enmiendas deben tener efecto retroactivo.
I
En Sr. Jeffrey Hernández García (peticionario) fue acu-sado por infracción del Art. 75 de la Ley Núm. 177-2003,(1) conocida como Ley para el Bienestar y la Protección Integral de la Niñez.(2) En la acusación, únicamente se alegó que el peticionario maltrató a su hija de un año al insul-tarla verbalmente. Así las cosas, el peticionario suscribió *662 un preacuerdo con el Ministerio Público mediante el cual hizo alegación de culpabilidad y recibió el beneficio del pro-grama de desvío dispuesto en el Art. 80 de la Ley Núm. 177, supra. (3) Conforme a ello, el Tribunal de Primera Ins-tancia paralizó los procedimientos y concedió al señor Her-nández García el privilegio de la libertad a prueba por el término de un año.
Una vez el peticionario cumplió con el desvío, el Tribunal de Primera Instancia archivó el caso y ordenó su sobreseimiento. Sin embargo, y como consecuencia del pro-ceso, el nombre del peticionario fue incluido en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (Registro), creado por la Ley Núm. 266-2004.(4) Posteriormente, y a solicitud del peticionario, el Tribunal de Primera Instancia ordenó al Superintendente de la Po-licía que devolviera al peticionario las huellas dactilares y fotografías que se le tomaron como parte de la investiga-ción criminal realizada. A pesar de dicha orden, cada año la Policía continuó tomándole las huellas dactilares y fotogra-fías al peticionario. Ante esta situación, el señor Hernán-dez García acudió al Tribunal de Primera Instancia y soli-citó que se le ordenara a la Policía que se abstuviera de tomarle fotos y huellas dactilares cada año y, además, que se eliminara su nombre del Registro.
Luego de varios trámites procesales, el Tribunal de Pri-mera Instancia celebró una vista argumentativa sobre la solicitud del peticionario en la que determinó su elimina-ción del Registro. No obstante, el Ministerio Público pre-sentó una moción de reconsideración en la cual argumentó que, según decisiones recientes del Tribunal de Apelacio-nes, el señor Hernández García se debía considerar como "convicto” de acuerdo con la Ley Núm. 177, supra, por lo que el peticionario debía permanecer en el Registro. Luego *663 de evaluar los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución en la que deter-minó que ciertamente el peticionario debía permanecer en el Registro.
Inconforme con la resolución del Tribunal de Primera Instancia, el señor Hernández García presentó ante el Tribunal de Apelaciones un recurso de certiorari en el cual solicitó la revocación de la resolución. Sin embargo, el Tribunal de Apelaciones confirmó al Tribunal de Primera Ins-tancia fundamentado en que la alegación de culpabilidad del peticionario por el delito de maltrato de menores —Art. 75 de la Ley Núm. 177, supra— había que considerarla como una convicción, aunque la persona se haya benefi-ciado del programa de desvío. Por lo tanto, el peticionario debía permanecer en el Registro.(5) Específicamente, el Tribunal de Apelaciones señaló lo siguiente:
A la luz del análisis realizado, concluimos que el peticiona-rio es un convicto, bajo las disposiciones de la Ley [Núm.] 177 y que no procede que este Tribunal, por fiat judicial, esta-blezca excepciones no contempladas en el estatuto. La Ley Núm. 266 no contempla excepciones ni concede discreción al Tribunal para eximir a determinados convictos del requisito de registrarse.(6)
En desacuerdo con la decisión del Tribunal de Apelacio-nes, el señor Hernández García presentó un recurso de apelación ante esta Curia en el que señaló, en síntesis, que había errado el foro apelativo intermedio al determinar que este era un convicto según las disposiciones de la Ley Núm. 177, supra, y que, por lo tanto, debía permanecer en el Registro.
Ahora bien, estando el recurso en turno para considera-ción de esta Curia, el 27 de enero de 2012, la Oficina del Procurador General compareció mediante una Moción de *664 desestimación por academicidad. A través de esta moción, el Procurador General señaló que mediante la aprobación de la Ley Núm. 243, supra, el estado de derecho en la Ley Núm. 177, supra, cambió, concediéndole al peticionario lo que este solicita y, por lo tanto, haciendo académico su recurso. No obstante, decidimos atender la Moción de des-estimación por academicidad que presentó el Procurador General como una en la cual se allana a lo solicitado en el recurso de certiorari(7) Siendo así, y de acuerdo con la Re-gla 50 del Reglamento del Tribunal Supremo, 183 D.P.R. 386, 484 (2011), resolvemos.
*665 hH I — i
A. Ley Núm. 177-2003 conocida como Ley para el Bienestar y la Protección Integral de la Niñez(8)
La Ley Núm. 177, supra, renfocó la política pública en Puerto Rico hacia la concertación de esfuerzos privados, comunitarios, familiares y gubernamentales con énfasis en la reunificación y el fortalecimiento de las familias.(9) El Art. 3 de esta ley creó, como nueva política pública del Estado, asegurar el mejor interés, la protección y el bienestar integral de la infancia y la adolescencia, y que, en el deber de asegurar ese bienestar, se deben pro-veer oportunidades y esfuerzos razonables que permitan conservar los vínculos familiares y comunitarios cuando ello no les perjudique.(10)
Como parte de esa política protectora, la Ley Núm. 177, supra, tipificó delitos, impuso penalidades, y creó medidas y mecanismos protectores necesarios para proteger a los menores. Esta legislación establece un procedimiento dirigido a velar por el bienestar de los menores al tiempo que propende a la rehabilitación de los padres para que éstos puedan ejercer su deber correctamente.(11) Relacionado con la consecución de esa rehabilitación, el Art. 80 de la Ley Núm. 177, supra, estableció un procedimiento de desvío que tienen disponible —a discreción del tribunal— aquellos primeros transgresores de esta ley. En lo pertinente, este artículo dispone que
[e]n cualquier caso en que una persona que no haya sido pre-viamente convicta por violar las disposiciones de esta Ley o de cualquier otra ley de Puerto Rico o de los Estados Unidos re- *666 lacionada con conducta maltratante hacia menores, incurra en conducta tipificada como delito en esta Ley, el tribunal podrá, motu propio o a solicitud de la defensa o del Ministerio Fiscal, después de la celebración del juicio y sin que medie una con-vicción, o luego de hacer una alegación de culpabilidad, suspender todo procedimiento y someter a dicha persona a un programa de desvío para la reeducación y readiestramiento de personas que incurren en conducta maltratante contra meno-res. ...
Si la persona beneficiada del programa de desvío que esta-blece este Artículo cumple a cabalidad con las condiciones im-puestas como parte del mismo, el Tribunal podrá, en el ejerci-cio de su discreción y previa celebración de vista, ordenar el sobreseimiento del caso en su contra. El sobreseimiento bajo este Artículo se realizará sin pronunciamiento de sentencia del tribunal, pero éste conservará el expediente de la causa con carácter confidencial, no accesible al público y separado de otros récords, a los fines exclusivos de ser utilizado por los tribunales al determinar si en procesos subsiguientes la persona cualifica para el beneficio provisto en este Artículo.
El sobreseimiento del caso no se considerará como una con-vicción a los fines de las descualificaciones o incapacidades impuestas por ley a los convictos por la comisión de algún delito y la persona cuyo caso haya sido sobreseído tendrá de-recho a que el Superintendente de la Policía le devuelva cua-lesquiera récords de huellas digitales y fotografías que obren en poder de la Policía de Puerto Rico tomadas en relación con la violación de ley por la cual fue procesado.(12)
Ahora bien, el Art. 80 de la Ley Núm. 177, supra, creó interpretaciones inconsistentes sobre lo que se consideraba un “convicto” para efectos de la ley. Por ejemplo, un panel del Tribunal de Apelaciones interpretó que “convicto” era solamente aquella persona contra la cual se había dictado un fallo de culpabilidad e imponía una sentencia y, por lo tanto, aquel que disfrutaba de un desvío no se podía consi-derar convicto para ser inscrito en el Registro.(13) Por otro lado, otros paneles del foro apelativo intermedio interpre-taron que las personas que hacían alegación de culpabili-dad y recibían el beneficio del programa de desvío de la Ley *667 Núm. 177, supra, se consideraban convictos y, por lo tanto, estaban obligados a estar inscritos en el Registro.(14)
B. Ley Núm. 266-2004 conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menoresi(15)
El 29 de julio de 1994, en una pequeña comunidad central del estado de Nueva Jersey, Jesse Timmendequas violó y asesinó a Megan Kanka, una niña de siete años quien —junto a sus padres— era su vecina. Al momento del ase-sinato de esta niña, ya Timmendequas contaba con dos convicciones previas por delitos sexuales contra menores. En aquel entonces, este terrible crimen acaparó la atención nacional, principalmente porque los padres de la pequeña Megan iniciaron una campaña para presionar a la legisla-tura de Nueva Jersey a que aprobaran una ley mediante la cual a los ciudadanos se les notificara de la presencia de ofensores sexuales en su comunidad. Así, en octubre 31 de 1994, la legislatura de Nueva Jersey aprobó una ley que requiere la creación de un registro de ofensores sexuales en ese estado, haciendo además obligatorio notificar a los re-sidentes de las comunidades sobre la presencia de este tipo de convicto.(16)
Después de la acción que tomó el estado de Nueva Jersey, muchos estados copiaron la iniciativa estableciendo re-gistros de ofensores sexuales según sus propios términos y parámetros. En 1994, el Congreso de Estados Unidos aprobó la Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Ací(17) (conocida como Megan’s Law), mediante la cual se estimuló a que los *668 estados aprobaran leyes que establecieran este tipo de registros.(18) Desde entonces, y ante la presión tanto de la opinión pública como del Congreso de Estados Unidos, cada estado ha adoptado alguna versión de la Megan's Law.
Así, el 9 de septiembre de 2004 se aprobó en Puerto Rico la Ley Núm. 266, supra, que creó el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores. El propósito de este registro es proteger a la comunidad contra actos de abuso sexual y abusos contra menores, además de servir como un medio para garantizar la seguridad, la protección y el bienestar general. (19) Así se señala claramente en su exposición de motivos al indicar que “el Estado tiene la obligación de proteger a la ciudadanía y a las víctimas de delito”.(20) Y es que existe un patente peligro de reincidencia en la comisión de delitos que implican crímenes sexuales o que constituyen abuso contra menores, lo que representa un riesgo y se puede traducir en graves daños a las posibles víctimas.(21)
A consecuencia de lo anterior, la Asamblea Legislativa entendió que existía la necesidad de que, tanto las agencias de orden público como la comunidad, conozcan el paradero de aquellas personas que han sido convictas de delitos de esta naturaleza. (22) En armonía con todo lo anterior, el Art. 1 de esta ley dispone, en lo pertinente, lo siguiente:
Ante el peligro que representa que la persona convicta por *669 delitos de esta naturaleza incurra nuevamente en esa conducta [,] y ante el riesgo que puede representar y el daño que puede causar una persona con tendencia irreprimida de cometer delitos sexuales!,] es necesario establecer un Registro en el que se anote su dirección y que contenga información sobre su persona y otros datos relevantes. Por medio de este Registro se mantendrán informadas todas las personas o enti-dades que lo soliciten, sobre el paradero de aquellas personas que han sido convictas de delitos sexuales o abuso contra me-nores, según se definen estos términos en la Ley, cuando éstas se reintegren a la libre comunidad. El Registro que se crea mediante esta Ley no tiene un propósito punitivo; es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad. (Enfasis suplido).
C. Ley 243-2011
Recientemente, se aprobó la Ley Núm. 243-2011, con el propósito de enmendar la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, Ley Núm. 266, supra.(23) En la Exposición de Motivos de la ley, la Asamblea Legislativa explicó que esta se creó para atemperar la Ley Núm. 266, supra, a las disposiciones de la Ley Federal Adam Walsh Child Protection and Safety Act of 2006, también conocida como Sex Offender Registration and Notification Act (SORNA). En su Exposición de Motivos, la Ley Núm. 243 dispone lo siguiente:
La Ley [SORNA] de 2006 establece unas obligaciones míni-mas a los estados y territorios de los Estados Unidos, con res-pecto al registro de personas convictas por delitos sexuales. En particular, dicho estatuto establece una revisión completa de los estándares nacionales para el registro y notificación de los ofensores sexuales, designada para fortalecer y aumentar la efectividad del registro para la seguridad del público. Además, sus disposiciones deberán ser implementadas en todas las ju-risdicciones de Estados Unidos de América, los cincuenta (50) estados, los territorios, incluyendo a Puerto Rico y las nacio-nes indígenas federalmente reconocidas. Entre las disposicio-nes sobresalientes de esta legislación federal se encuentra el *670 establecimiento de unas guías mínimas publicadas por el De-partamento de Justicia Federal para ser cumplidas por todas las jurisdicciones de Estados Unidos. Las guías revisadas fue-ron aprobadas el 2 de julio de 2008. Federal Register Vol. 73, No. 128. Estas guías establecen unos estándares mínimos de cumplimiento. Sin embargo, no prohíbe que los estados, sus territorios y las naciones indígenas adopten medidas adiciona-les más estrictas que suplementen las guías.(24)
En lo pertinente al caso de autos, la Ley Núm. 243, supra, enmendó la Ley Núm. 266, supra, añadiendo nuevas definiciones y, en específico, estableciendo tres clasificacio-nes de lo que se considerará un “ofensor sexual” para efec-tos del Registro de la Ley Núm. 266, supra. Además, se dispone sobre los deberes de la persona incluida en el Re-gistro y los deberes de las agencias que mantienen la infor-mación del Registro actualizada.
D. Art. 1 de la Ley Núm. 243, supra
Para aclarar concluyentemente quién se considera “convicto” para efectos del Registro, la Ley Núm. 243, supra, definió por primera vez este término. Así, el Art. 1 de la Ley Núm. 243 enmendó el Art. 2 de la Ley Núm. 266 para establecer que “convicto” es toda persona convicta por algún delito, sus tentativas o conspiraciones, según establecidos en la propia ley, e incluye, además, a “toda persona que disfrute de libertad bajo palabra, condicionada, libertad a prueba o algún método de cumplimiento alterno de la pena de reclusión, por los delitos, sus tentativas o conspiraciones, establecidas en esta Ley”. (Enfasis suplido).(25) Quiere decir, entonces, que se considerará convicto a toda persona que cumpla según cualquier método alterno la pena de reclusión, como es el programa de desvío establecido en la Ley Núm. 177, supra. Además, y como adelantamos, el Art. 1 de la Ley Núm. 243 también enmendó el Art. 2 de la Ley Núm. 266 para establecer quién *671 se considerará un “ofensor sexual”, estableciendo tres cla-sificaciones basadas en el delito sexual cometido: ofensor sexual tipo I, ofensor sexual tipo II y ofensor sexual tipo III.
Por otra parte, y muy pertinente al caso de autos, el Art. 2(8)(iii) de la Ley Núm. 266, supra, según enmendada, ahora dispone que se considerará un ofensor sexual tipo I aquella persona que incurra en el “[d]elito de maltrato a menores, según establecido en los Artículos 75 y 76 de la Ley Núm. 177-2003, según enmendada, cuando se incurre en conducta constitutiva de abuso sexual”. (Enfasis suplido). De manera que, una persona que infringe el Art. 75 de la Ley Núm. 177, supra, se considerará ofensor sexual tipo I y se registrará en el Registro únicamente si su conducta constituyó abuso sexual.
E. Art. 2 de la Ley Núm. 243, supra
 El Art. 2 de la Ley Núm. 243, supra, enmendó el Art. 3 de la Ley Núm. 266, supra, para establecer cuáles personas tendrán ahora la obligación de aparecer en el Registro. En lo pertinente, este artículo dispone que se re-gistrarán los ofensores sexuales tipo I, ofensores sexuales tipo II y ofensores sexuales tipo III. Además, el inciso (c) de este mismo artículo expresa que también se registrarán las personas convictas que disfrutan de algún método alterno de cumplimiento de la pena de reclusión por haber come-tido alguno de los delitos enumerados en el Art. 3 de la Ley Núm. 266, supra, según enmendada(26) Sin embargo, en su inciso (d), este artículo también dispone que serán regis-tradas
[Z]as personas que al momento de la aprobación de esta Ley se encuentren recluidas o participando de algún programa de desvío, tratamiento o rehabilitación de la Administración de Corrección, o que posterior a la aprobación de esta Ley sean *672 sometidos a dichos programas, por la comisión de alguno de los delitos enumerados o sus tentativas o conspiraciones en el Artículo 2 de esta Ley. Disponiéndose que en estos casos, una vez el acusado cumpla con las condiciones impuestas por el Tribunal, y éste ordene el sobreseimiento de la acción criminal, según lo disponen las leyes pertinentes a dichos programas, el Sistema eliminará la inscripción del acusado en el Registro aquí establecido. (Énfasis suplido).
De lo anterior podemos colegir que a partir de la apro-bación de la Ley Núm. 243-2011, una vez la persona cum-ple con el programa de desvío y el tribunal ordena el sobre-seimiento de la acción criminal, se deberá eliminar su nombre del Registro.
F. Art. 15 de la Ley Núm. 243, supra
El Art. 15 de la Ley Núm. 243, supra —“Vigencia”— tiene como propósito establecer cuándo comenzarán a regir todas las enmiendas que el estatuto introduce a la Ley Núm. 266, supra, señalando que éstas tendrían vigencia inmediata a la aprobación de la ley. No obstante, este artículo también establece que las disposiciones de esa ley —con la excepción de dos instancias— podrán tener efecto retroactivo.(27) Al utilizar la palabra “podrán” es evidente que el legislador parece haberle imprimido un carácter discrecional a la aplicación retroactiva de todas aquellas disposiciones que expresamente éste no exceptuó.(28) Así también lo reconoce el Procurador General en su Moción de desestimación por academicidad, al hablar del “efecto retroactivo discrecional de la Ley Núm. 243”. (Enfasis en el original).(29)
*673 Ahora bien, el Art. 9 del Código Penal de 2004 establece el principio de favorabilidad.(30) Este artículo dis-pone sobre la aplicación retroactiva de una ley penal que favorece a una persona imputada de delito. En lo pertinente, el Art. 9 dispone lo siguiente:
(a) Si la ley vigente al tiempo de cometerse el delito es dis-tinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o ala medida de seguridad o al modo de ejecutarlas, se aplicará retroactivamente.

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el he-cho, la pena quedará extinguida y la persona liberada, de es-tar recluida o en restricción de libertad. (Énfasis suplido).
El principio de favorabilidad establece que si una ley penal se aprueba posterior a la comisión de unos hechos delictivos, y sus efectos resultan en un tratamiento más favorable para un acusado, ésta se debe aplicar retroactivamente, de modo que el acusado disfrute de sus beneficios. No obstante, hemos señalado que el principio de favorabilidad no tiene rango constitucional, por lo que la aplicación retroactiva de las leyes penales que favorezcan al acusado queda dentro de la prerrogativa total del legislador. (31) Siendo así, es permisible restringir su alcance mediante legislación.(32) Por eso, para poder aplicar retroactivamente un nuevo estatuto penal en beneficio de un ciudadano —principio de favorabilidad— debemos, en primer lugar, determinar si el legislador no ha limitado tal alcance.(33)
*674 III
En el presente caso, luego de que el peticionario Her-nández García presentara su petición de apelación ante esta Curia, entraron en vigor las enmiendas a la Ley Núm. 266, supra, introducidas por la Ley Núm. 243, supra. Entre los cambios incorporados por esta ley se encuentra el que, al definir la palabra “convicto” en el marco de la Ley Núm. 266, el legislador aclaró que una persona que dis-frute de libertad bajo palabra, condicionada, libertad a prueba o algún método de cumplimiento alterno de la pena de reclusión se considerará convicto. Por lo tanto, en el caso de autos el foro a quo tenía razón al interpretar que las personas que hacían alegación de culpabilidad y reci-bían el beneficio del programa de desvío de la Ley Núm. 177, supra, se consideran convictos.
Por otro lado, y como vimos, la enmienda a la Ley Núm. 266, supra, también creó un sistema de clasificación que establece que si una persona ha infringido el Art. 75 de la Ley Núm. 177, supra, se clasificará como un ofensor sexual tipo I siempre y cuando incurra en conducta que constituya abuso sexual. Al introducir esta enmienda, el legislador no sólo define por primera vez la figura del ofensor sexual para efectos del Registro y establece gradaciones relaciona-das a ésta, sino que aclara su alcance en el contexto de los artículos 75 y 76 de la Ley Núm. 177, supra, señalando que la convicción que requerirá inscripción es aquella constitu-tiva de abuso sexual. Tal limitación no existía en la Ley Núm. 266, supra, antes de esta enmienda, pues el estatuto no especificaba que la conducta que infringía el Art. 75 de la Ley Núm. 177, supra, tenía que constituir abuso sexual.
Sin embargo, en cuanto al Art. 3 de la Ley Núm. 266-2004, según enmendado por la Ley Núm. 243-2011, en-mienda que permite ahora la eliminación del Registro de aquellos ciudadanos cuyas causas hayan sido sobreseídas como consecuencia de haber cumplido con un programa de *675 desvío, es claro que las circunstancias particulares del pe-ticionario Hernández García no están contenidas en el estatuto. Esto, pues “al momento” de la aprobación de la enmienda, el peticionario no se encontraba participando del programa de desvío de la Ley Núm. 177, sino que lo había completado y se había sobreseído la causa criminal en su contra. Como resultado de lo anterior, y a pesar de la discreción que el legislador otorgó a los tribunales para aplicar la nueva enmienda en favor del ciudadano, éste no incluyó las circunstancias particulares del aquí peticionario.
Una circunstancia parecida ocurre con la aplicación de la enmienda que hizo la Ley Núm. 243-2011 al Art. 2(8)(iii) de la Ley Núm. 266. Aunque el legislador dejó fuera de la definición de “convicto” para efectos de la Ley Núm. 266 el delito por el cual el aquí peticionario hizo alegación de cul-pabilidad, nada dispuso con relación a aquellas personas que, como Hernández García, estuvieran inscritos como consecuencia de delitos que pudieran haberse entendido como incluidos en la ley, pero que ya sin duda no lo están.
Por otro lado, es un hecho que la inscripción de una persona en el Registro creado por la Ley Núm. 266-2004, supra, surge como consecuencia obligada de una convicción por alguno de los delitos que expresamente establece la ley, y como parte del acto de lectura de sentencia que se dicta en su contra.(34) Sin embargo, la Exposición de Motivos de la Ley Núm. 266-2004, según enmendada, ex-presa claramente que el Registro no tiene un propósito punitivo.(35) Esto es, la intención del Estado al ordenar que como parte de su sentencia una persona convicta sea inscrita en el Registro no constituye un castigo. No empece lo anterior, es evidente que una persona cuyo nombre aparece inscrito en el referido Registro se perjudica al sufrir el des- *676 crédito que implica ser identificado pública y constante-mente como un ofensor sexual o maltratante de menores, y al padecer del estigma social que inevitablemente ello aca-rrea; ciertamente las consecuencias son muy negativas. Como señaló el Tribunal Supremo de Estados Unidos en Smith v. Doe, 538 U.S. 84, 99 (2003): “The publicity [of the sex offender registration] may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism”. (Este es el caso en el que el Tribunal Supremo federal sostuvo la constituciona-lidad a nivel federal de los registros de ofensores sexuales {Megan’s Law) ante el planteamiento de que violaban la cláusula ex post facto de la Constitución Federal).
Ahora bien, si el propósito del Registro no es punitivo, ¿a qué obedece entonces su implantación? Nuevamente, la Exposición de Motivos de la Ley Núm. 266-2004, según enmendada, supra, así como el primer artículo de la propia ley nos proveen la contestación a tal interrogante al seña-larnos que el Registro “es un medio para garantizar la se-guridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección [en] nuestra sociedad”.(36) Esto es, “[a]nte el peligro que representa que la persona convicta por delitos de esta naturaleza incurra nuevamente en esa conducta y ante el riesgo que puede representar y el daño que puede causar una persona con tendencia irreprimida de cometer delitos sexuales”, (37) lo que se pretende “exclusivamente [es] proteger la seguridad y el bienestar de los sectores más vulnerables ... de nues-tra sociedad”.(38)
De igual manera y de forma reiterada lo expuso la Asamblea Legislativas en la Exposición de Motivos de la Ley Núm. 243-2011, supra, al señalar lo siguiente:
*677 Resulta meritorio, además, aprovechar esta ocasión para reiterar que nuestro Registro, al igual que los Registros esta-blecidos en todos los estados de los Estados Unidos, no tiene un propósito punitivo; es un medio por el cual el Estado puede velar por la seguridad, protección y bienestar general. Igual-mente, enfatizamos que brindar mayor protección y seguridad a los menores de edad en cuanto a la explotación sexual y crímenes violentos se refiere; promover la seguridad de los jóvenes; atacar y prevenir el abuso infantil y la pornografía infantil, entre otros asuntos, reviste uno de alto interés pú-blico, que amerita la aprobación por parte de la Asamblea Le-gislativa de Puerto Rico de esta Ley.(39)
Como corolario de todo lo anterior, es forzoso concluir que la inscripción en el Registro creado por la Ley Núm. 266-2004, supra, constituye una medida de seguridad que, aunque no surge de una ley penal, es impuesta como consecuencia del incumplimiento de una ley penal por parte de un ciudadano, medida de seguridad que recae como parte de su sentencia. Esto es, la persona que se encuentra inscrita en el Registro está cumpliendo con parte de lo que es —por mandato de ley— su sentencia penal.
El hecho de que la Ley Núm. .266-2004, supra, sea iden-tificada expresamente por el legislador como una ley no penal, no significa que sus disposiciones no puedan ser comprendidas por el principio de favorabilidad del Art. 9 del Código Penal, supra.(40) Después de todo, las llamadas Megan’s Law son leyes auxiliares de leyes penales cuya aplicación —como en el caso de autos— se da muchas veces como parte de un proceso penal. En ese sentido, aunque la Ley Núm. 266-2004, supra, sea una ley civil “no punitiva”, según designada por el legislador, ese hecho no es óbice para la aplicación del principio de favorabilidad en aque-llas instancias en que la denominada ley “no punitiva” *678 tiene efectos notablemente perjudiciales en el individuo a quien se le aplica.
Por otro lado, es cierto que la medida de seguridad que constituye la inscripción en el Registro de un ofensor sexual es distinta a la del Art. 91 del Código Penal, 33 L.P.R.A. sec. 4719, pues esta última conlleva la reclusión de la persona en alguna institución para tratamiento. No obstante, eso no implica que toda medida de seguridad requiera la reclusión de la persona. Tanto el Art. 96 del propio Código Penal, 33 L.P.R.A. sec. 4724, como la Regla 241(e) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, facultan al tribunal para permitir que una medida de seguridad se complete en la libre comunidad, siempre y cuando exista supervisión(41) Además, en Smith v. Doe, supra, el Tribunal Supremo federal equiparó la acción de inscribir a un ofensor sexual en un registro público (Megan’s Law), a una medida de seguridad (restrictive measure).(42)
*679 En el presente caso, año tras año la Policía de Puerto Rico le ha tomado fotos y huellas dactilares al señor Her-nández García por el hecho de que éste se encuentra ins-crito en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores. Es claro, entonces, que las circunstancias son las descritas por el inciso (b) del Art. 9 del Código Penal, supra, id est, “durante el término en que” el peticionario Hernández García se encontraba su-friendo los efectos —-justos o injustos— de lo que fuera el proceso de su alegación de culpabilidad, desvío y sobresei-miento de su causa, “entr[ó] en vigor una ley más benigna en cuanto a la pena o a la medida de seguridad o al modo de ejecutarl[a]’\
¿Debe aplicarse esa enmienda que favorece al peticionario retroactivamente? Ciertamente, ya que éste satisface los requerimientos del Art. 3(d) de la Ley Núm. 266. Toda enmienda producida por la Ley Núm. 243 a la Ley Núm. 266, conocida como Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, que resulte en un beneficio para aquellas personas que están sufriendo los efectos de la Ley Núm. 266, supra, se deberá aplicar retroactivamente de acuerdo con el Art. 9(b) del Código Penal, supra. Claro está, siempre y cuando la persona cumpla con las condiciones establecidas en la Ley Núm. 266, según enmendada, supra.
De esta manera, interpretamos que la discreción otor-gada por el legislador en la aplicación de estas enmiendas —Art. 15 de la Ley Núm. 243, supra— no aplica a aquellas que puedan beneficiar a un ciudadano cuyo nombre se en-cuentra inscrito en este Registro. Esto, ya que el legislador no limitó expresamente la retroactividad del beneficio. Al contrario, la intención legislativa de la Ley Núm. 243, supra, con relación este tipo de enmienda en beneficio del ciudadano fue aclarar la Ley Núm. 266, supra, y hacer re-troactivos sus efectos. Así surge, no sólo del texto de la *680 Exposición de Motivos —refiriéndose al nuevo Art. 3 de la Ley Núm. 266 — (43) sino del texto mismo del Art. 3 según fuera enmendado, el cual en su inciso (d) retrotrae el al-cance de este artículo a “[l\as personas que al momento de la aprobación de esta Ley se encuentren ... participando de algún programa de desvío, tratamiento o rehabilitación .... Disponiéndose que en estos casos, una vez el acusado cum-pla con las condiciones [y se] ordene el sobreseimiento de la acción criminal!,] el Sistema eliminará la inscripción del acusado en el Registro aquí establecido”. El hecho de que tal retroactividad no alcanzara las circunstancias del aquí peticionario, precisa entonces la aplicación, como hemos hecho, del principio de favorabilidad.
En el caso de autos, a pesar de que el señor Hernández García cumplió con el programa de desvío dispuesto en el Art. 80 de la Ley Núm. 177, supra, y el Tribunal de Primera Instancia ordenó el sobreseimiento de la causa penal, su nombre fue inscrito en el Registro por tratarse de un delito contra la protección a los menores. Aunque esta úl-tima realidad jurídica fue cambiada mediante las enmien-das introducidas a la Ley Núm. 266, supra, por la Ley Núm. 243, supra, persiste una resolución del Tribunal de Primera Instancia en perjuicio del peticionario. Así las co-sas, al comparar los artículos pertinentes de la Ley Núm. 266, supra, vigentes al momento de la resolución del Tribunal de Primera Instancia y las enmiendas producidas por la Ley Núm. 243, supra, es evidente que la nueva ley es más favorable para el señor Hernández García. Por lo tanto, debemos aplicar el principio de favorabilidad.
Al peticionario se le imputó infringir el Art. 75 de la Ley Núm. 177, supra, y pudo optar al desvío del Art. 80 de *681 dicha ley precisamente porque la conducta imputada no implicó abuso sexual. Por lo tanto, el delito por el cual hizo alegación de culpabilidad ya no requiere la inscripción en el Registro. Además, el peticionario cumplió con su pro-grama de desvío y su causa fue sobreseída, por lo que, como resultado de la reciente enmienda al Art. 3 de la Ley Núm. 243, supra, su nombre hubiera tenido que ser elimi-nado del Registro de todos modos. Ante esta situación, no existe base legal para que el señor Hernández García per-manezca en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores de la Ley Núm. 266, supra, según enmendada.
IV
Por los fundamentos antes expuestos, acogemos el es-crito presentado como una petición de “certiorari”, expedi-mos el auto y revocamos la sentencia del Tribunal de Apelaciones. Ordenamos que se elimine al señor Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton hace cons-tar la expresión siguiente:
El Juez Presidente Señor Hernández Denton concurre con el resultado de la Opinión mayoritaria por entender que el prin-cipio de favorabilidad del Art. 9 del Código Penal, 33 L.P.R.A. see. 4637, no plica a los hechos de este recurso. El Art. 1 de la Ley que creó el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores, Ley Núm. 266-2004 (4 L.P.R.A. see. 536 et seq.), dispone claramente que este estatuto “no tiene un propósito punitivo”, lo cual excluye la aplicación del principio de favorabilidad. Además, en lo pertinente al caso ante nos, la Ley Núm. 243-2011 enmendó el Art. 3(d) de la Ley Núm. 266-2004, supra, para establecer que el nombre del ciudadano se eliminará del Registro una vez este cumpla *682 con un programa de desvío y el tribunal ordene el sobresei-miento de la acción criminal. Según el Art. 15 de la Ley Núm. 243-2011, las disposiciones de esa ley podrán tener efecto retroactivo. Consiguientemente, hubiera dejado sin efecto los dictámenes de los foros inferiores mediante la interpretación de la Ley Núm. 266-2004, según enmendada, supra, sin hacer referencia al Código Penal.
La Juez Asociada Señora Rodríguez Rodríguez hace constar la expresión siguiente:
La Juez Asociada Señora Rodríguez Rodríguez concurre con la Opinión del Tribunal por entender que la Ley Núm. 243 de 14 de diciembre de 2011, ley para enmendar la Ley del Regis-tro de Personas Convictas por Delitos Sexuales y Abuso contra Menores y otros fines, excluyó de este registro a aquellas per-sonas que incurrieron en el delito de maltrato de menores ti-pificado en los Arts. 75 y 76 de la Ley Núm. 177 de 2003 (8 L.P.R.A. sees. 450c y 450d), cuando el maltrato no constituyó abuso sexual. Cónsono con las enmiendas, procede excluir al peticionario de dicho Registro, ya que los hechos por los cuales hizo alegación de culpabilidad no constituyeron abuso sexual.
Asimismo, la Juez Asociada Señora Rodríguez Rodríguez considera que el principio de favorabilidad incluido en el Art. 9 del Código Penal, 33 L.P.R.A. see. 4637, no aplica en este caso. El Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores tiene como fin garantizar la seguridad, la protección y el bienestar general de los menores, no impo-ner una pena. En este sentido, el legislador puede otorgarle discreción a los tribunales para excluir o mantener a una persona convicta de abuso sexual en el mencionado Registro.
El Juez Presidente Señor Hernández Denton se unió a las expresiones de la Juez Asociada Señora Rodríguez Rodríguez. El Juez Asociado Señor Martínez Torres emitió una opinión concurrente, a la cual se unió la Jueza Aso-ciada Señora Pabón Charneco.

 El Art. 75 de la Ley Núm. 177-2003 dispone, en lo pertinente, que
“[t]odo padre, madre o persona responsable por el bienestar de un menor o cualquier otra persona que por acción u omisión intencional que cause daño o ponga en riesgo a un menor de sufrir daño a su salud e integridad física, mental o emocio-nal, incluyendo pero sin limitarse a incurrir en conducta constitutiva de delito sexual, incurrir en conducta constitutiva de violencia doméstica en presencia de menores, incurrir en conducta obscena o la utilización de un menor para ejecutar conducta obscena será sancionado ...”.

 8 L.P.R.A. sec. 450c.

 8 L.P.R.A. sec. 450h.

 4 L.P.R.A. sec. 536 et seq.

 Apéndice de la Apelación, págs. 149-150.

 íd., pág. 151.

 Decidimos atender la Moción de desestimación por academicidad que pre-sentó el Procurador General como una en la cual se allana a lo solicitado en el recurso de certiorari por lo siguiente: En el presente caso, el Tribunal de Primera Instancia emitió una Resolución el 29 de julio de 2011 en la que determinó que el peticionario permanezca en el Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (Registro). Véase Apéndice de la Petición de certiorari, pág. 78. Tal determinación fue confirmada por una sentencia final del Tribunal de Apela-ciones el 16 de noviembre de 2011. Véase íd., pág. 132. Con relación a esa sentencia final es que el peticionario recurre en tiempo ante esta Curia. Es entonces que so-breviene un cambio en la ley que crea un estado de derecho distinto —en esta ins-tancia y por lo que explicamos en la Opinión— en beneficio del peticionario.
Ahora bien, con su Moción de desestimación por academicidad, el Procurador General sometió también una copia de una Moción informativa que el Ministerio Público presentó ante el Tribunal de Primera Instancia el 25 de enero de 2012, esto es, dos días antes de que se presentara ante este Tribunal la Moción de desestima-ción por academicidad. Véase Anejo Núm. 2 de la Moción de desestimación por academicidad. En esta moción informativa, el Ministerio Público le solicita al Tribual de Primera Instancia que “tome conocimiento de que el Ministerio Público no habrá de oponerse a la eliminación del señor Hernández García del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores”. Id., pág. 17. Sin embargo, es menester señalar que en la etapa procesal en la que se encuentra este caso, el foro primario no puede reconsiderar su posición, puesto que ha perdido su jurisdicción con relación a aquellas materias o asuntos que se cuestionan en el recurso.
Siendo así, es claro que lo único que ha ocurrido en el caso de autos es un cambio en la norma cuestionada, mas no así en las circunstancias que provocaron la apela-ción del peticionario, pues este permanece, conforme a la sentencia del Tribunal de Apelaciones que confirma la resolución del foro de instancia, inscrito en el mencio-nado Registro. De hecho, no podría ser de otra forma, ya que cualquier acción en pro de eliminar al peticionario del mencionado registro sería, hasta que no advenga final y firme la decisión de esta Curia, en violación a una resolución final de un tribunal con jurisdicción.

 8 L.P.R.A. sec. 444 et seq.

 Estrella, Monge v. Figueroa Guerra, 170 D.P.R. 644 (2007).

 Íd.

 Estrella, Monge v. Figueroa Guerra, supra.

 Véase 8 L.P.R.A. sec. 450h.

5) Véase Pueblo v. Rivera Mojica, KLC2009-01591.

 Véanse: Pueblo v. Battle Torres, KLCE2009-00181; Pueblo v. Pérez Flores, KLCE2010-00861.

 4 L.P.R.A. sec. 536 et seq.

 En realidad, esta no fue la primera ley que requirió tal tipo de registro en un estado de Estados Unidos. En 1990, el estado de Washington ya había aprobado el Community Protection Act. Wash. Rev. Code Ann. Sec. 4.24.550.

 42 U.S.C. sec. 14071 (1994 y Supl. IV 1998).

 El Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act realmente no obligaba a los estados a aprobar este tipo de ley, sino que advertía que aquellos que no las aprobaran perderían el 10% de la subvención federal para programas de justicia criminal otorgada según el Byrne Program.

 M.E. Rivera Negrón, Legislación sobre los derechos de las víctimas, 44 (Núm. 1) Rev. Jur. U.I.P.R. 161, 182 (2010).

 Exposición de Motivos de la Ley Núm. 266-2004. Véase, además, Art. 1 de la Ley Núm. 266, supra.

 Exposición de Motivos de la Ley Núm. 266, supra.

 Íd.

 Esta ley también enmendó el Art. 8 de la Ley Núm. 175-1998, conocida como Ley del Banco de Datos de ADN de Puerto Rico.

 Véase Exposición de Motivos de la Ley Núm. 243-2011.

 Art. 2(1) de la Ley Núm. 266, según enmendada.

 Art. 3(c) de la Ley Núm. 266, supra, según enmendada.

 Este Art. 15 exceptúa de esta retroactividad los incisos (f) y (g) del Art. 4, pues señala que los mismos tendrán efecto prospectivo. Estos incisos expresan la prohibición que tienen las personas inscritas en el Registro de establecer su residen-cia a quinientos pies de una escuela o cuido de niños, y la obligación de la agencia concernida de notificar al ofensor sexual con relación a esa prohibición.

 Estos incisos son el (f) y (g) del Art. 4 de la Ley Núm. 243, supra. No discutimos dichos artículos por no ser pertinentes a la controversia que nos ocupa.

 Véase Moción de desestimación por academicidad del Procurador General, pág. 7.

 33 L.P.R.A. sec. 4637.

 Pueblo v. González, 165 D.P.R. 675 (2005).

 Íd.

 D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, comentado, 5ta ed., San Juan, Inst, para el Desarrollo del Derecho, 2004-2005, pág. 10.

 4 L.P.R.A. sec. 536b.

 Exposición de Motivos de la Ley Núm. 266, supra.

 Íd.

 Íd. Véase 4 L.P.R.A. sec. 531.

 Íd.

 Exposición de Motivos de la Ley Núm. 243-2011, supra.

 Nótese, además, que la propia Ley Núm. 266-2004, supra, contiene penas para las personas que infrinjan sus disposiciones. Así, la referida ley tipifica tal conducta como delito menos grave y le impone una pena de hasta seis meses de reclusión, o multa de hasta $5,000, o ambas penas, a discreción del Tribunal. Art. 11 de la Ley Núm. 266-2004 (4 L.P.R.A. sec. 536h).

 Los Arts. 94, 95 y 96 del Código Penal, 33 L.P.R.A. secs. 4722, 4723 y 4724, encuentran su razón de ser en el hecho de que —como señalamos en el cuerpo de la Opinión— el Art. 91 se refiere a una medida de seguridad que conlleva reclusión, distinto a la diseñada por la Asamblea Legislativa mediante la creación del Registro de la Ley Núm. 266-2004. Esto es, la persona, a pesar de haber sido —por razón de incapacidad mental o trastorno mental transitorio— encontrada no culpable, se en-frenta a la posibilidad real de ser recluida en una institución para recibir tratamiento. En ese contexto, lo cierto es que ese ciudadano podría verse privado de su libertad hasta que ya no constituya una amenaza para la comunidad o para sí mismo. Claro está, y como señala también el Art. 92 (33 L.P.R.A. sec. 4720), el tiempo de esa reclusión nunca podrá ser superior a la pena aplicable al delito por el cual se le acusó.
A eso responden los requisitos que imponen los referidos artículos: a la necesi-dad de que, previo a la implantación y mientras el ciudadano esté sometido a la restricción de su libertad, el proceso en todo momento le provea las garantías míni-mas que aseguren la oportunidad de cuestionar si tal reclusión es realmente necesaria. Por eso la necesidad, previo a la implantación de la medida, de un informe siquiátrico o sicológico y un informe social (Art. 94); el derecho a que se celebre una vista para poder confrontar a los autores de dichos informes con sus conclusiones (Art. 95), y la necesidad de revisiones periódicas para evaluar si la reclusión im-puesta como medida de seguridad se puede dejar sin efecto o modificar (Art. 96). Por lo anterior, es claro que tales artículos no aplican en el caso de la medida de seguri-dad que constituye la inscripción en el Registro que establece la Ley Núm. 266-2004.

 Smith v. Doe, 538 U.S. 84, 93 (2003).

 La Exposición de Motivos de la Ley Núm. 243, supra, señala lo siguiente:
“Igualmente, se aclara que estarán obligados a registrarse las personas que participen en programas de desvío, tratamiento o rehabilitación de la Administra-ción de Corrección. Disponiéndose que una vez cumplidas las condiciones y archivado el caso por el Tribunal, la inscripción será eliminada del Registro”. (Enfasis suplido).